## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| **Thomas Niemeyer,** | ) | |
| **Shuntisha Carpenter,** | ) | |
| **Erica Little**, and | ) | |
| **James Cassidy**, Individually | ) | |
| and as Representatives of a Class | ) | |
| of Persons Similarly Situated | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  07-1103 |
| | ) | |
| **Sonni Williams**, Assistant Corporation | ) | |
| Counsel of the City of Peoria, in her | ) | |
| individual capacity, | ) | |
| **Steven M. Settingsgaard**, Chief of | ) | |
| the City of Peoria Police Dep't, in his | ) | |
| individual capacity, | ) | |
| **City of Peoria**, Illinois, | ) | |
| **Wells Fargo Financial Acceptance,** | ) | |
| **Inc.,** and, | ) | |
| **Citizens Equity First Credit Union** | ) | |
| d/b/a CEFCU, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiffs challenge certain aspects of the City of Peoria's

impoundment of vehicles and release of those vehicles to lienholders. This

case is before the Court for a Report and Recommendation on Defendants'

respective motions to dismiss Plaintiff's Amended Complaint under Fed. R.

Civ. P. 12(b)(6).  (d/e's 9, 24, 26, 27, 29).

## Standard

To state a claim under federal notice pleading standards, all the

Complaint must do is set forth a "short and plain statement of the claim

showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

Factual allegations are accepted as true and need only give "'fair notice of

what the . . . claim is and the grounds upon which it rests.'"  EEOC v.

Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting*

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation

omitted).  However, the "allegations must plausibly suggest that the plaintiff

has a right to relief, raising that possibility above a 'speculative level . . . .'"

Id., *quoting* Bell, 127 S.Ct. at 1965, 1973 n. 14.  "Although this does 'not

require heightened fact pleading of specifics,' it does require the complaint

to contain "'enough facts to state a claim to relief that is plausible on its

face.'" Killingsworth v. HSBC Bank Nevada, --- F.3d ----, 2007 WL 3307084

*3 (7th Cir. 2007), *quoting* Bell, 127 S.Ct. at 1974 (other citations omitted).

The Seventh Circuit "observed that 'we understand the [Supreme] Court to

be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.'" Id., *quoting* Airborne Beepers, 499 F.3d at 663, 667 (7th Cir. 2007).

## Amended Complaint (d/e 23)

The allegations below are taken from the Amended Complaint and set forth as true for purposes of this Recommendation only.

### *Plaintiff Niemeyer*

Niemeyer's vehicle was stolen and was being used, unbeknownst to Niemeyer, to transport illegal drugs.  On August 27, 2005, Niemeyer was going home for lunch when he saw his stolen vehicle on the street.  A police officer informed Niemeyer that the car was being impounded because it had been used to transport drugs.  Per the officer's instructions, Niemeyer call the Peoria Police Department and was told that Wells Fargo Financial Acceptance, Inc. ("Wells Fargo") was being informed of the impoundment.  Wells Fargo held a lien on Niemeyer's vehicle to secure its loan.

A Wells Fargo employee then phoned Niemeyer to tell him that Wells Fargo intended to repossess the vehicle unless Niemeyer paid the City the

1:07-cv-01103-JBM-BGC   # 40   Page 4 of 29

$500 impoundment fee plus storage and towing charges *and* paid the loan in full.  On an unspecified date, Wells Fargo paid the $500 plus to the City of Peoria ("the City") and obtained possession of Niemeyer's vehicle.  Wells Fargo then immediately sold Plaintiff's vehicle without obtaining an adjudication of its right to possession or Plaintiff's default.

At the time Niemeyer's vehicle was impounded, Peoria City Code Section 20-105(b)(1) allowed impoundment only if the vehicle was used in the possession or delivery of a controlled substance "with the knowledge of the owner of record."  (Ex. 1 to original Complaint, d/e 1).  The Code at that time (and presently) allowed the owner to request a preliminary hearing within 12 hours of the seizure to establish whether probable cause existed for the impoundment.  Peoria City Code § 20-106(b)(3).  However, the Code only requires the police officer to give notice of the right to request that preliminary hearing to the person in control of the vehicle, not to the owner of the vehicle.  Peoria City Code § 20(b)(2).  The owner also has a right to request a later hearing (a "final" hearing) on the propriety of impoundment, which must be held no later than 30 days after the request is filed (45 days in the new version).  Peoria City Code § 20-106(b)(4).

Niemeyer pursued his right to challenge the impoundment in a final hearing.  On June 8, 2005, the hearing officer upheld the impoundment.  However, Niemeyer successfully appealed that decision to Peoria County Circuit Court.  On October 18, 2006 (more than one year after the initial impoundment), the Circuit Court reversed the hearing officer on the grounds that Niemeyer lacked knowledge that his car was being used to transport illegal drugs.  The Circuit Court directed the City to return the vehicle, but it was too late because Wells Fargo had already sold it.

At the time of the impoundment of Niemeyer's vehicle, Peoria City Code Section 20-106(b)(5) provided that:

> Any motor vehicle that is not reclaimed within thirty (30) days after the expiration of the time during which the owner of record may seek judicial review of the city's action under this section, or the time at which a final judgment is rendered in favor of the city, or the time a final administrative review decision is rendered against an owner of record who is in default, may be disposed of as an unclaimed vehicle as provided by law.[1]

## Plaintiff Cassidy

Cassidy loaned his car to someone who drove it with a female passenger unknown to Cassidy.  On August 9, 2007, the police stopped

---

[1]Plaintiff cites Peoria City Code Sections 20-105 to 20-109, which contain similar language but regarding different criminal offenses.  Only section 20-106 appears relevant in this case.

the vehicle and arrested the driver.  Cassidy's vehicle was impounded, apparently because the passenger was found with a small amount of marijuana in her purse.

A Peoria City police officer told Cassidy that Cassidy could retrieve his vehicle if he paid the $525 to the City, plus towing and storage charges, by 2:00 p.m. on August 10, 2007.  Cassidy showed up as instructed, with the $525 in hand.  However, his money was refused by an officer, who informed him that "the only person that the Peoria Police Department would allow to take possession of Cassidy's vehicle was the lienholder, CEFCU." (Amended Complaint ¶ 41).  The City then, on some unspecified date, turned the vehicle over to CEFCU.  CEFCU declared Plaintiff in default and refused to return his vehicle unless he paid the loan in full, plus the impoundment fees and towing charges.

At the time of the impoundment of Cassidy's car, Peoria City Code § 20-106 had been changed to delete the requirement that the owner know the vehicle was being used to possess or transport illegal drugs.  (Ex. 1 to original Complaint, d/e 1).  Thus, the "innocent owner" defense had been removed.  However, an exception had been added for vehicles reported stolen.  Id.; Peoria City Code § 20-106(b)(7).  Additionally, the section was

changed to allow disposition of the vehicle 30 days after a final

administrative decision or upon failure of the owner to timely request a

hearing.  Id.; Peoria City Code § 20-106(b)(5).

### *Plaintiff Carpenter*

Plaintiff Carpenter was sitting in her car in her driveway, with her

boyfriend.  Police officers pulled up behind them and, without probable

cause, searched Carpenter, finding a small amount of cannabis in her

purse.  She was arrested but later released and not prosecuted.

The City impounded Carpenter's vehicle and notified the lienholder,

CEFCU.  CEFCU paid the fees and charges and repossessed Carpenter's

vehicle.  At present, CEFCU continues to possess Carpenter's vehicle,

maintaining that Carpenter is in default and demanding the loan be paid in

full, plus fees and charges.  Carpenter asserts that she did not seek an

impoundment hearing because it would have been meaningless, as the

City had already released the vehicle to CEFCU.  (Amended Complaint

¶ 28).

### *Plaintiff Little*

The Illinois State Police stopped Little for speeding and for having an

unlawful license plate cover.  A search of her car uncovered a controlled

substance in one of the passenger's bags.  Little and the passenger were

arrested.  Little posted bond and charges against her have not been

pursued.

The Illinois State Police impounded Little's vehicle and turned

possession over to a towing company.  CEFCU, the lienholder,

repossessed the vehicle with the State Police's authorization.  CEFCU

continues to possess Little's vehicle, maintaining that she is in default and

demanding the loan be paid in full, plus fees and charges.

## Analysis

Plaintiffs assert a violation of their Fourth Amendment and Fourteenth

Amendment rights.  Plaintiffs also pursue state claims, but Defendants

have not moved to dismiss them.

## I.  Misjoinder of Plaintiff Little

As an initial matter, though no party directly raises the issue, the

Court believes it necessary to address whether Plaintiff Little is properly

joined in this case.  Plaintiff Little's car was not impounded by the City, but

by the Illinois State Police.  (Amended Complaint ¶ 33).  The Illinois State

Police allegedly then authorized CEFCU to repossess the vehicle,

whereupon CEFCU declared Plaintiff in default of the loan agreement.  Id.
¶ 34.

Fed. R. Civ. P. 20(a) provides that "[a]ll persons may join in one
action as plaintiffs if they assert any right to relief jointly, severally, or in the
alternative in respect of or arising out of the same transaction, occurrence,
or serious of transactions or occurrences and if any question of law or fact
common to all these persons will arise in the action. . . . " Fed. R. Civ. P. 21
("Misjoinder and Non-Joinder of Parties") allows the court on motion or on
its own initiative to drop a party "at any stage of the action and on such
terms as are just.  Any claim against a party may be severed and
proceeded with separately."

The court sees no question of law or fact common to Little and the
claims of the other Plaintiffs.  The Illinois State Police's handling of Little's
vehicle has nothing to do with the City's impoundment and release policies.
That the lienholder was CEFCU does not make Little's claims (whatever
they are) arise out of the same transaction or occurrences as the claims of
the other Plaintiffs.   Accordingly, the Court will recommend that Little's
claims be severed and proceeded with separately, if those claims can
proceed at all in federal court.

## II.  Motions to Dismiss by the City and Williams and Settingsgaard in their official capacities (d/e 9)

The City contends that <u>Towers v. City of Chicago</u>, 173 F.3d 619 (7th 1999) precludes Plaintiff's facial challenges to its impoundment ordinances.

Vehicle owners in <u>Towers</u> challenged, under 42 U.S.C. § 1983, a Chicago ordinances imposing a $500 penalty on owners of any vehicle containing illegal drugs.  173 F.3d at 621.  The ordinance required police to seize and impound a vehicle containing the illegal item, regardless of the owner's knowledge.  <u>Id.</u>  The officer was required to provide notice "to anyone identifying himself as the owner, or anyone else in control of the vehicle, that the owner can request a preliminary hearing . . . [to] be held within 24 hours of the seizure."  <u>Id.</u>

The Seventh Circuit affirmed dismissal for failure to state a claim. The Court held that the $500 was not an excessive fine under the Eighth Amendment and that imposition of the fine regardless of the owner's knowledge did not violate substantive due process.  The Court further found that the plaintiffs could not proceed on their procedural due process claim regarding the preliminary hearing because they had not alleged lack of probable cause for the impoundment.  173 F.3d at 627-630.

## A.  Fourth Amendment

Defendants argue that Plaintiffs' Fourth Amendment claims fail under

Towers because Plaintiffs admit probable cause existed for the

impoundment.  This appears true as to Carpenter and Cassidy.  Carpenter

was sitting in her car with cannabis; that is probable cause for

impoundment under either version of the Code.  (Amended Complaint ¶

23).  Similarly, a passenger in Cassidy's car had marijuana in her purse,

which establishes probable cause to impound Cassidy's car under the

Code in effect at the time (which did not have the innocent-owner defense).

(Amended Complaint ¶ 39).

The Court reaches a different conclusion on Plaintiff Niemeyer's

Fourth Amendment claim.  Probable cause arguably did not exist to

impound Niemeyer's car, since the Code at the time required Niemeyer to

*know* that his car was being used to transport illegal drugs.  In fact,

Niemeyer allegedly obtained reversal of the impoundment based on his

lack of knowledge.  Thus, Niemeyer arguably has a Fourth Amendment

claim.

Plaintiffs also assert a Fourth Amendment violation based on the

unreasonable length of time the City and lienholders retained possession of

the vehicles after impoundment, and upon the City's release of the vehicles to the lienholders.  The Court agrees with Defendants that Lee v. City of Chicago, 330 F.3d 456, (7th Cir. 2003), precludes the Fourth Amendment from reaching that far.  In Lee, the City of Chicago properly impounded an owner's vehicle for evidentiary purposes, but then retained the vehicle after it was no longer needed, refusing to release it until the owner paid the towage and storage fees, though the owner was an innocent crime victim. Topping it off, the City of Chicago spray painted the vehicle with large, red inventory numbers.

Lee sued under 42 U.S.C. § 1983, claiming that the City's refusal to release the vehicle was an unreasonable seizure under the Fourth Amendment and violated his Fourteenth Amendment substantive due process rights (he made no procedural due process challenge).  The Seventh Circuit upheld dismissal of the Fourth Amendment claim, holding that the Fourth Amendment applied only to whether the initial seizure was reasonable and supported by probable cause, not to the reasonableness of the continued seizure:

> Once an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable.  The [Fourth] amendment then cannot be invoked by the dispossessed owner to regain his property.  330 F.3d at 466.

As discussed below, <u>Lee</u> also affirmed dismissal of the substantive due process claim (based on the refusal to release the car) on the grounds that the plaintiff had not shown that his state remedies were inadequate. However, the <u>Lee</u> Court did find that the owner had standing to challenge the constitutionality of the spray painting because he had identified a constitutionally cognizable property interest in his vehicle at the time the City spray painted it.  330 F.3d at 470.  On remand, the District Court dismissed that remaining claim for failure to state a Fourth Amendment or substantive due process violation.  <u>Lee v. City of Chicago</u>, 2003 WL 22071475 (N.D. Ill. 2003).

<u>Lee</u> teaches that the Fourth Amendment applies to claims regarding probable cause for the initial seizure, and to the reasonableness of that seizure before probable cause is established, but not to the reasonableness of a continued seizure once probable cause has been established.  Plaintiffs cite to <u>Luck v. Rovenstine</u>, 168 F.3d 323,325 (7th Cir. 1999), but <u>Luck</u> involved the jail detention of an arrestee for eight days without a probable cause hearing.  <u>Luck</u> confirmed that the Fourth Amendment governs confinement before a probable cause hearing, while the due process clause governs confinement after probable cause is established.  168 F.3d at 326.  <u>Luck</u> does not lend support to Plaintiffs

argument that the City's continued seizure and release of the vehicle to the lienholder implicates the Fourth Amendment.  Likewise, <u>Johnson v. City of Evanston</u>, 250 F.3d 560, 563 (7th Cir. 2001), also cited by Plaintiffs, does not extend the Fourth Amendment to wrongful retention of property properly seized.  In <u>Johnson</u>, the Seventh Circuit noted that the City's initial seizure of a vehicle had to be supported by probable cause, and that a "condition to the exercise of continuing public dominion over private property is the offer of a hearing to determine who is in the right."  250 F.3d at 563.

### B.  Fifth Amendment

Plaintiffs argue in their response that they can also recover under the Fifth Amendment in a takings claim.

> The Takings Clause of the Fifth Amendment provides that "no private property [shall] be taken for public use, without just compensation" . . . . "While it confirms the State's authority to confiscate private property, the text of the Fifth Amendment imposes two conditions on the exercise of such authority: the taking must be for a 'public use' and 'just compensation' must be paid to the owner."

<u>Peters v. Village of Clifton</u>, 498 F.3d 727, 731 (7th Cir. 2007), *quoting* <u>Brown v. Legal Found. of Washington</u>, 538 U.S. 216, 231-32 (2003)(emphasis removed).

Plaintiffs argue that <u>Lee</u> supports their Fifth Amendment takings claim.  *(See* <u>Lee</u>, 330 F.3d at n.5 and Judge Wood's concurring opinion). However, even if a takings claims is hypothetically possible, it cannot be made in federal court until state remedies are pursued unsuccessfully: an owner's claim for just compensation must have been denied before a takings claim is ripe.  <u>Peters</u>, 498 F.3d at 73 n. 4.  Accordingly, the Court sees no Fifth Amendment claim for Plaintiffs, who do not allege they have pursued any state remedies for compensation (damages).

### C.  Fourteenth Amendment:   Substantive Due Process

Plaintiffs also assert that the conversion of their vehicles violated their substantive due process rights.

The Court agrees with the City that <u>Towers</u> and other controlling precedent preclude Plaintiffs' substantive due process claim.  First, though it is not clear if Plaintiffs even pursue this claim, a substantive due process challenge to the deletion of the innocent-owners defense from the Peoria City Code fails under <u>Towers</u>.  173 F.3d at 626.  Second, "substantive due process should not be called upon when a specific constitutional provision protects the right allegedly infringed upon . . . ."  <u>Brokaw v. Mercer County</u>, 235 F.3d 1000, 1017 (7th Cir. 2000)(citation omitted). "Where a particular amendment 'provides an explicit textual source of constitutional protection'

against a particular sort of government behavior, 'that amendment, not the more generalized notion of "substantive due process" must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994)(quoted cite omitted).  Here, Plaintiffs allege that they were deprived of their property without meaningful notice and an opportunity to contest that deprivation.  That is a procedural, not a substantive, due process claim.  *See also* <u>Lee v. City of Chicago</u>, 330 F.3d 456, 467 (7th Cir. 2003)("substantive due process is not 'a blanket protection against unjustifiable interferences with property.'")(*quoting* <u>Schroeder v. City of Chicago</u>, 927 F.2d 957, 961 (7th Cir.1991).  Lastly, even if the allegations could fit into a substantive due process claim, Plaintiffs have not alleged that their state remedies are inadequate, a requirement for such claims. <u>Lee</u>, 330 F.3d at 467 ("Because Lee's substantive-due-process claim does not implicate a fundamental right and involves only the deprivation of a property interest, he must show as an initial matter either that state-law remedies are inadequate or that an independent constitutional right has been violated.")(citation omitted).[2]

---

[2]Plaintiff Niemeyer argues that he has no state remedies because his car has already been sold, but he does not address the availability of damages in a state action (such as his conversion action).

## D.  Fourteenth Amendment: Procedural Due Process

Plaintiffs assert that the City impounded their vehicles and turned those vehicles over to lienholders without adequate notice to Plaintiffs of their rights to a preliminary hearing to contest probable cause for the impoundment; without adequate notice to Plaintiffs of their rights to request a final hearing on the propriety of the impoundment; and without a timely and meaningful opportunity for Plaintiffs to actually contest the impoundment in either hearing (or at least pay the fees) before release of the vehicles to the lienholders.

Defendants press that <u>Towers</u> precludes a procedural due process challenge to the City's ordinance.  However, the <u>Towers</u> Court expressly declined to determine whether Chicago's notice provisions to the owner about rights to a preliminary hearing satisfied procedural due process.  The <u>Towers</u> Court remarked that:

> . . . to the extent that the authorities have altered significantly, by their arrest of the driver, the possibility of the owner's receiving prompt notice, the City might well have an obligation, depending on the 'practicalities and peculiarities' of the situation, to utilize other sources of information readily available to it to determine the identity of the owner and to give that individual notification of the preliminary hearing.  173 F.3d at 629.

The Towers Court expressed "sufficient misgivings about the comprehensiveness of the notice provisions in the ordinances to rest our decision on an alternate ground." Id.  The Court then determined that the notice provisions were irrelevant because the plaintiffs never alleged that probable cause did *not* exist to impound the vehicles.  Thus, "there was nothing to contest at a preliminary hearing and therefore no deprivation of due process in its absence." Id.  Thus, Towers does not necessarily bar Plaintiffs' procedural due process claims regarding notice of the preliminary hearing, and Towers did not address the notice provisions for a final hearing.

The Court realizes that, under Towers, Cassidy and Carpenter likely have no procedural due process claim as to the preliminary probable cause hearing.  Since probable cause existed for the initial impoundment of their vehicles, whether Cassidy or Carpenter received notice of their right to a preliminary hearing is irrelevant, since they could not have established lack of probable cause even if they had requested and attended a preliminary hearing.  Towers, 173 F.3d at 629.

However, that is not the only procedural due process challenge advanced by Cassidy and Carpenter. Plaintiffs Niemeyer and Carpenter allege that they did not in fact receive notice of their right to the final

hearing.  They allege that, despite what the Code requires, "it is the regular practice of the City of Peoria not to give such notice . . ."  (Amended Complaint ¶ 79).  Cassidy and Niemeyer also allege that they did not receive a meaningful opportunity to contest the impoundment, which appears to based on the City's practice of releasing an impounded vehicle to the lienholder before a hearing can even be held or before the owner can pay the fee.  At this point, the Court believes it would be premature to parse out the type of procedural due process claim each plaintiff may pursue.

Defendants also assert that the procedural due process claims fail because Plaintiffs have adequate state remedies.  However, in the Fourteenth Amendment procedural due process analysis, the availability of state remedies come into play only if the constitutional deprivations were "random and unauthorized."  In procedural due process parlance, the question whether state remedies are adequate is irrelevant if the deprivation was authorized pursuant to established procedures or policies. *See* Wilson v. Civil Town of Clayton, 839 F.2d 375, 380 (7th Cir. 1988).[3]  It

---

[3]If, however, it turns out that the disposition of the vehicles was random and unauthorized, Plaintiffs will have to show that state remedies were inadequate in order to sustain their federal procedural due process claims. *See* Daniels v. Williams, 474 U.S. 327 (1986); Murdock v. Washington, 193 F.3d 510, 513 (7th Cir. 1999)(no due process violation where adequate state post-deprivation remedy for confiscation of property was available).

is too early to tell if the deprivations here were a result of a <u>Monell</u>-type policy or instead the "random and unauthorized" actions of individuals.  The determination is better left to summary judgment.

### E.  Defendants Williams and Settingsgaard in Official Capacities

Plaintiff alleges that Williams and Settingsgaard played a part in establishing the policies that led to the disposition of Plaintiffs' vehicles without procedural due process.

Much argument is devoted to whether Williams and Settingsgaard had final policymaking authority.  However, that determination does not necessarily decide whether the City is liable under a <u>Monell</u> claim.  Liability attaches to the City if Plaintiffs' rights were violated by:  1) an express policy of the City; 2) a widespread practice "so permanent and well-settled as to constitute a custom or usage within the force of law"; or, 3) a person with "final policy-making authority."  <u>Billings v. Madison Metropolitan School Dist.</u>, 259 F.3d 807, 816 (7th Cir. 2001), *citing* <u>McCormick v. City of Chicago</u>, 230 F.3d 319, 324 (7th Cir. 2000).

Even if Williams and Settingsgaard did not have "final policy-making authority," their actions could still be evidence of the existence of an express City policy or a widespread practice.  Additionally, the City may also be liable for the actions of an employee who lacks final policymaking

authority if that employee's actions were "ratified" by the City.  *See*  Baskin

v. City of Des Plaines, 138 F.3d 701, 705 (7th Cir.1998)(discussing

ratification theory).  Therefore, the City could still be liable under Monell

even if Williams and Settingsgaard did not have final policymaking

authority.

However, Defendants Williams and Settingsgaard should be

dismissed in their official capacities for another reason.  A § 1983 claim

against a defendant in an official capacity is a claim against the

government entity that he or she represents, in this case the City of Peoria.

Since the City is already named as a defendant, naming these defendants

in their official capacities is redundant.  *See* Sanville v. McCaughtry, 266

F.3d 724, 732-33 (7th Cir. 2001)("Official capacity suits are actions against

the government entity of which the official is a part.").  The Court will

therefore recommend dismissal of Williams and Settingsgaard in their

official capacities.

## III.    Defendants Williams and Settingsgaard in Individual Capacities

Defendant Williams moves to dismiss the claims against her in her

individual capacity, arguing that the allegations give no notice of how she

was personally involved in violating Plaintiffs' rights.  It is not clear if

Defendant Settingsgaard also moves for his dismissal individually, but the Court's recommendation would be the same for him.

The Court agrees with Williams that the gravamen of Plaintiffs' claim is that she and Settingsgaard "adopted policies which led to the conversion of Plaintiffs' vehicles." (d/e 29). The Court also agrees that Defendants must be "personally responsible" for the deprivation of Plaintiffs' rights to be individually liable under 42 U.S.C. § 1983. Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001).

However, personal responsibility can be inferred if a defendant knows "about the conduct and facilitates it, approves it, condones it, or turns a blind eye . . . ." Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988). Additionally, a policy maker with sufficiently culpable mens rea might be individually liable for devising policies that deprive persons of their Constitutional rights. *See* Armstrong v. Squadrito, 152 F.3d 564, 579, 581 (7th Cir. 1998).

Here, the Court believes that determination of the personal involvement of Williams and Settingsgaard would be premature. According to the allegations, these defendants were personally responsible for creating or condoning an apparently unwritten practice of releasing impounded vehicles to lenders before the owners had notice and an

opportunity to contest the impoundment or to pay outstanding fees. Williams and Settingsgaard could be individually liable if they personally and knowingly condoned the disposition Plaintiffs' vehicles without procedural due process.  In short, dismissing them individually would require factual determinations more appropriate for summary judgment on a fully developed record.

Williams seeks qualified immunity to the extent she is sued in her individual capacity.[4]  "When confronted with a claim of qualified immunity, a court must first ask the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" Brosseau v. Haugen, 543 U.S. 194, 197 (2004), *quoting* Saucier v. Katz, 533 U.S. 194, 201 (2001). "[G]overnment officials performing discretionary functions are immune from suit if 'their conduct "could reasonably have been thought consistent with the rights they are alleged to have violated."'" Borello v. Allison, 446 F.3d 742, 746 (7th Cir. 2006)(quoted cites omitted).  Though the determination of qualified immunity should be made as soon as possible, id., a 12(b)(6) dismissal on qualified immunity grounds is usually precluded by the factual

---

[4]As discussed earlier, it is not clear if Defendant Settingsgaard joined in this motion, but the recommendation would be the same for him.

determinations required.   Alvarado v. Litscher, 267 F.3d 648, 652 (7th Cir. 2001)(citation omitted).

Plaintiffs essentially allege that their vehicles were converted without notice and a meaningful opportunity to contest that conversion.  Plaintiffs' further allege that Williams and Settingsgaard approved of this deprivation. The Court must accept the allegations as true at this point.  Deprivation of a constitutionally-protected interest in property without adequate notice and an opportunity to be heard is a well-established right; Towers confirms that by noting its misgivings about the City of Chicago's notice provisions regarding the preliminary hearing for impounded vehicles.  It also appears established, or at least not disputed, that "the use of one's automobile, even for a short period of time, is a property right protected by the Due Process Clause."  Towers, 173 F.3d at 628.  Accordingly, in the case's present posture, the Court does not believe Defendants Williams has shown that qualified immunity is warranted.  A more developed record may show otherwise.

## IV.  CEFCU's Motion to Dismiss

CEFCU argues that Plaintiffs' allegations do not sufficiently plead that CEFCU acted under color of state law.  Section 1983 liability reaches only

defendants who are "state actors," persons acting under the color of state

law.  Gayman v. Principal Financial Serv., 311 F.3d 851 (7th Cir. 2002).

> For an individual to act under color of law, there must be
> evidence of a concerted effort between a state actor and that
> individual. . . . To establish § 1983 liability through a conspiracy
> theory, a plaintiff must demonstrate that: (1) a state official and
> private individual(s) reached an understanding to deprive the
> plaintiff of his constitutional rights, . . .; and (2) those
> individual(s) were " 'willful participant[s] in joint activity with the
> State or its agents.' "

Fries v. Helsper, 146 F.3d 452, 457 (7th Cir.1998)(quoted cites and other

citations omitted); *see also* Thurman v. Village of Homewood, 446 F.3d

682, 687 (7th Cir. 2006).

CEFCU asserts that it was exercising its private contractual rights as

a lender and its rights under Article 9 of the UCC as a secured creditor,

which permits "self-help" repossession upon default.  *See* 810 ILCS 5/9-

609. CEFCU argues that exercising these rights does not make it a state

actor simply because those vehicles were impounded by the City at the

time of repossession.  CEFCU contends that Plaintiffs claims against them,

to the extent any can be made, are state claims, not federal.

CEFCU's argument is persuasive and may ultimately prevail, but the

Court believes it is premature to make that determination.  The Court

agrees that lienholders repossessing vehicles from the City does not, by

itself, suggest state action.  However, Plaintiffs allege that the lenders

"acted in concert with and/or conspiracy with the City of Peoria . . . to acquire possession of [impounded] vehicles on which . . . [the lenders] had a lien . . . ." (Amended Complaint ¶8). Specifically, Niemeyer alleges that police officers were on the phone with his lienholder before Neimeyer even had an opportunity to pay the fee or seek a preliminary hearing. Similarly, Carpenter alleges that her car was released to the lienholder before she had a chance to pursue a hearing. Cassidy was allegedly told that only the lienholder could pay the fee and obtain Cassidy's car. An inference arises that the City "took sides" with the lenders, helping the lenders prematurely repossess the vehicles, which forced Plaintiffs to pay not only the City fines and fees, but the entire amount of the loan due. See Greco v. Guss, 775 F.2d 161, 167-68 (7th Cir. 1985)("a private party acting jointly with a state official who abuses his authority also acts under color of state law and is subject to section 1983 liability")(citations omitted).

In light of these allegations, the Court believes the record is too sparse to determine the nature of the understanding or arrangement between the lienholders and the City, if any. A developed record will enable a more informed decision. Accordingly, the Court will recommend CEFCU's motion to dismiss be denied.

## V.  Wells Fargo's Motion to Dismiss

Wells Fargo moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that a settlement agreement and release bars Plaintiff Niemeyer's action against Wells Fargo.  However, as Plaintiff Niemeyer correctly points out, the release is an affirmative defense under Fed. R.Civ. P. 8(c), a contention that must be decided on summary judgment.  *See* Deckard v. Gen. Motors Corp., 307 F.3d 556, 560 (7th Cir. 2002)("a motion to dismiss was improper since release is an affirmative defense").  The Court accordingly recommends that Wells Fargo's motion to dismiss be treated as one for summary judgment, and the parties be given an opportunity to submit additional pertinent material.  *See* Fed. R. Civ. P. 12(b).[5]

WHEREFORE:

1) The Court recommends that, pursuant to Fed. R. Civ. P. 21, Plaintiff Little's claims be severed from the case and proceeded with separately, if they can proceed in federal court at all.

---

[5]Plaintiff Niemeyer argues that he is not bound by the Release because Wells Fargo has not performed all of its obligations under the Release.  The Court makes no recommendation regarding this issue.  However, the Court does note that a suit to enforce a settlement agreement is generally a state-law action.  Kokkonen v. Guardian life Ins. Co. of America, 114 S.Ct. 1673 (1994); Lynch v. Samatamason, 279 F.3d 487, 489 (7th Cir 2002).

2) The Court recommends that the motions to dismiss by the City and Defendant Williams and Settingsgaard in their official capacities be granted in part and denied in part as follows (d/e's 9, 26):

> a) The Court recommends that the Fourth Amendment claims of Plaintiffs Cassidy and Carpenter be dismissed, but that Plaintiff Niemeyer's Fourth Amendment claim remain.

> b) The Court recommends dismissal of the Fourteenth Amendment substantive due process claims and the Fifth Amendment takings claims (to the extent they are made).

> c) The Court recommends the motions be denied with regard to Plaintiffs' 14th Amendment procedural due process claims.

> d) The Court recommends that Defendants Willams and Settingsgard be dismissed in their official capacities as redundant of the 42 U.S.C. § 1983 claim against the City of Peoria.

2) The Court recommends that CEFCU's motion to dismiss be denied (d/e 27).

3) The Court recommends that the motion to dismiss by Defendant Williams in her individual capacity be denied (d/e 29).

4) The Court recommends that Wells Fargo's motion to dismiss (d/e 24) based on the release be treated as a motion for summary judgment motion and the parties be given an opportunity to submit additional pertinent material and a briefing schedule should be set by the Court.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

      ENTER:        November 21, 2007

                              s/ Byron G. Cudmore

                          _____
                              BYRON G. CUDMORE
                              UNITED STATES MAGISTRATE JUDGE