**E-FILED**
Monday, 31 March, 2008 05:16:06 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

THOMAS NIEMEYER, SHUNTISA CARPENTER, ERICA LITTLE, and JAMES CASSIDY, Individually and as Representatives of a Class of Persons Similarly Situated,

Plaintiffs,

v. Case No. 07-cv-1103

SONNI WILLIAMS, Individually; STEVEN M. SETTINGSGAARD, Individually; CITY OF PEORIA, ILLINOIS; WELLS FARGO FINANCIAL ACCEPTANCE, INC.; and, CITIZENS EQUITY FIRST CREDIT UNION,

Defendants.

**O P I N I O N and O R D E R**

Before the Court is Magistrate Judge Cudmore's Report and Recommendation [Doc. 40] addressing the Motions to Dismiss filed by Defendants [Docs. 9, 24, 26, 27, and 29]. For the reasons that follow, the Report and Recommendation is ADOPTED IN PART, REJECTED IN PART, and MODIFIED IN PART.

**BACKGROUND**

This case concerns the towing, impounding, and disposition of vehicles owned by Plaintiffs pursuant to policies of the City of Peoria. In a 40 page Amended Complaint, Plaintiffs allege that their Constitutional rights were violated by the City's practice and policy of seizing and disposing of their vehicles without due process of law. Plaintiffs appear to allege both procedural and substantive due process violations and unreasonable seizure claims in addition to state law claims of conversion.

PLAINTIFFS

***Plaintiff Niemeyer***

According to the Amended Complaint, Plaintiff Niemeyer's 2003 Dodge was towed and impounded by the City of Peoria in 2005 because it "had been used in the transportation of drugs." When Plaintiff, whose car was used without his knowledge, called the Peoria Police Department after observing his car being towed, he was informed that an officer was discussing the matter with Defendant Wells Fargo, which had a lien on the vehicle. Thereafter, Wells Fargo called Niemeyer and informed him that it would repossess the vehicle unless Niemeyer paid the impoundment fee and the entire loan on the vehicle. After Wells Fargo itself paid the impoundment fee, it took possession of the vehicle and sold it at auction. Niemeyer indicates that the vehicle was in fact stolen by a third party and that he had no knowledge that it was being used in the drug trade. Niemeyer demanded a hearing on the matter, which was held on June 8, 2005, before the Impoundment Hearing Officer. Niemeyer did not prevail; how6ever, he applied to the Circuit Court. The Circuit Court reversed the hearing officer's decision finding that the City of Peoria improperly impounded the vehicle in contravention of local ordinances. The Court ordered the return of the vehicle; however, this was not possible as the vehicle had already been sold at auction.

***Plaintiff Carpenter***

On an unspecified date, Carpenter was in her vehicle, a 2006 Chrysler, in her driveway with her boyfriend, Corey Johnson. Peoria police executed a search warrant for Johnson and, in the process, searched Carpenter. Officers found cannabis in Carpenter's purse and she was arrested. Her vehicle was subsequently towed and impounded. Peoria police then informed the lien holder on the vehicle, Citizens Equity First Credit Union (CEFCU), of the impoundment.

CEFCU paid the impoundment fee and repossessed the vehicle. CEFCU refuses to return the vehicle unless Carpenter pays the loan balance and the impoundment fee. Carpenter did not seek a hearing on the matter as she believed it would be futile as the car had already been turned over to CEFCU.

***Plaintiff Little***

On an unspecified date, Little was stopped by the Illinois State Police while driving her 2005 Dodge. The State police found controlled substances in a bag in the trunk of the car which belonged to a passenger. Little was arrested, along with the passenger, and her vehicle was towed and impounded. The lien holder, CEFCU, then obtained possession of the vehicle, declared Little to be in default, and refuses to return the car to her.

***Plaintiff Cassidy***

On an unspecified date, Cassidy loaned his 2006 Pontiac to Isiah Foster. Peoria police executed an arrest warrant for Foster while he was driving the car with a female passenger. The female passenger had cannabis in her purse and was arrested. Cassidy's car was subsequently impounded. Cassidy attempted to immediately pay the impoundment fee but was told that the vehicle would only be released to the lien holder, CEFCU. CEFCU subsequently acquired possession of the vehicle and demanded Cassidy pay the loan balance on the vehicle and the impoundment fee before it would return the car.

IMPOUNDMENT ORDINANCE

As indicated by Judge Cudmore, the Code of the City of Peoria, which is attached to the original Complaint as Exhibit 1, governs the impoundments in this case. In the Code's current form, motor vehicles that are "used in the possession or delivery of a controlled substance or drug paraphernalia" are subject to seizure and impoundment. Peoria City Code § 20-106(b)(1).

When a vehicle is seized, it is to be taken to a facility controlled by the City of Peoria and the person who controlled the vehicle is given notice of the fact of the seizure and notice of the right of the owner to request a preliminary hearing. Id. at § 20-106(b)(2). Such a request for a preliminary hearing must be made in writing and in person within 12 hours of a seizure. Id. at § 20-106(b)(3). Within 10 days after the seizure the City must notify the owner of the vehicle by certified mail of the right to request a hearing. Id. § 106-20(b)(4). Such a hearing must be requested within 15 days of mailing of the notice and must be held within 45 days of the request. Id. If a vehicle is not reclaimed within 30 days of a final administrative hearing or if there is no timely request for a hearing, it "may be disposed of as an unclaimed vehicle as provided by law." Id. § 106-20(b)(5). These are the provisions of the Code that applied to Carpenter, Little, and Cassidy.

The code section was slightly different when Niemeyer's car was seized. In that version of the code, a vehicle may only be seized if it was used "with the knowledge of the owner of record." In addition, the provision regarding the disposition of the vehicle read:

> Any motor vehicle that is not reclaimed within thirty (30) days after the expiration of the time during which the owner of record may seek judicial review of the city's action under this section, or the time at which a final judgment is rendered in favor of the city, or the time a final administrative decision is rendered against an owner of record who is in default, may be disposed of as an unclaimed vehicle as provided by law. As used in this section, the 'owner of record' of a vehicle means the record titleholder.[1] Id. § 106-20(b)(5).

[1] In its current form, this section reads:

> Any motor vehicle that is not reclaimed within thirty (30) days after a final administrative decision is rendered in favor of the city upon a hearing or against an owner of record who is in default or upon the failure of the owner of record to timely request a hearing, may be disposed of as an unclaimed vehicle as provided by law. As used in this section, the 'owner of record' of a vehicle means the record titleholder. Id. § 106-20(b)(5)(as amended July 5, 2005).

This difference refers to the type of final judgment that would start the 30 day clock running on the disposition of the vehicle.

With respect to lien holders, like Wells Fargo and CEFCU, the code section provides that:

> Notwithstanding any other provision of this section, whenever a person with a lien or record against a vehicle impounded under this section has commenced foreclosure proceedings, possession of the vehicle shall be given to that person if he or she agrees in writing to refund to the city the net proceeds of any foreclosure sale, less any amounts necessary to pay all lien holders of record, up to the total amount of penalties and fees imposed under this subsection (b). Id.

This section of the code governed the impoundments of each of Plaintiffs' vehicles.

AMENDED COMPLAINT

Plaintiffs' claims against each Defendant appear to be identical. Defendants include two city employees (City Corporation Counsel Williams and Chief of Police Settingsgaard), the City of Peoria, and two corporations, Wells Fargo and CEFCU. Plaintiffs assert that Williams created and implemented the impoundment policy at issue. Plaintiffs assert that Chief Settingsgaard implemented and enforced the vehicle impoundment policy in addition to disposing of the vehicles at issue. Plaintiffs assert that the City of Peoria is responsible for Williams' and Settingsgaard's actions and is an indispensable party. Plaintiffs finally allege that Wells Fargo and CEFCU acted under the color of state law and in concert with the City and its agents to acquire and possess the vehicles in an unconstitutional manner.[2]

Plaintiffs state that the ordinance violates the Constitution both facially and as applied. Plaintiffs allege that Defendants retained possession of the vehicles for an unreasonable length of time and that the seizure of the vehicles and disposition of the vehicles were objectively

[2] It should be noted that Plaintiffs have filled a purported class action lawsuit.

unreasonable and in violation of the Fourth Amendment. Plaintiffs further allege that Defendants failed to follow the notice and hearing requirements of the ordinance and instead have a custom and policy to turn over the vehicles to lien holders prior to any such notices and hearings – both in violation of substantive and procedural due process. Plaintiffs' federal claims are made pursuant to 42 U.S.C § 1983. Finally, Plaintiff s allege state law claims of conversion.

MOTIONS TO DISMISS

Each Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docs. 9, 24, 26, 27, and 29].

The City of Peoria argues that Plaintiffs' facial challenge to the ordinance is foreclosed by Towers v. City of Chicago, 173 F.3d 619 (7th Cir. 1999). This Defendant further argues that Plaintiffs' seizure claims must be dismissed because an unreasonable seizure claim cannot extend beyond the initial seizure as indicated in Towers and Lee v. City of Chicago, 330 F.3d 456 (7th Cir. 2003). The City also argues that Plaintiffs have an adequate state law remedy and that Plaintiffs cannot assert substantive due process claims. Finally, the City argues that the individual Defendants neither engaged in policy-making nor were they final decision-makers.

Both Williams and Settingsgaard (who adopted Williams' arguments) argue that Plaintiffs have failed to assert their personal involvement in any of the events that form the basis of the Amended Complaint. Williams next argues that she is entitled to absolute and qualified immunity and that Plaintiffs cannot sustain an individual liability suit against her. Williams finally argues that Plaintiffs fail to adequately allege a claim of state law conversion.

CEFCU argues that Plaintiffs failed to sufficiently allege that it was acting under the color of state law. CEFCU further argues that there is no allegation that it unreasonably searched the vehicles at issue or that it initially seized the vehicles. Moreover, CEFCU argues that it was

exercising its rights under Illinois law to take possession of a vehicle that is in default. CEFCU finally argues that Plaintiffs have an adequate state law remedy.

Wells Fargo's arguments are directed at Niemeyer's claims. Wells Fargo argues that Niemeyer's individual claims are barred by a release of claims signed by Niemeyer in 2005. Wells Fargo further argues that Niemeyer cannot act as a class representative (because his claim is barred by the release) and that the other Plaintiffs cannot act as class representatives against Wells Fargo as they have no claims against it.

## REPORT AND RECOMMENDATION

After outlining the facts of this case as presented in the Amended Complaint, Judge Cudmore first found that Plaintiff Little was improperly joined. Judge Cudmore noted that Little's car was not seized by the City of Peoria but rather by Illinois State Police. Judge Cudmore found that Little's claims were unrelated to the claims of the remaining Plaintiffs. Plaintiffs object to this conclusion by arguing that Little's "experience demonstrates this [impoundment and release] policy [of the City of Peoria] was applied to other governmental agencies when the opportunity arose." Plaintiffs make the additional legal argument that CEFCU waived this argument, that the Federal Rules have broad joinder requirements, and that joinder of Little will prevent duplicative discovery. Plaintiff does not specifically indicate how Judge Cudmore erred in his analysis. CEFCU, however, argues that Little's claims should be dismissed rather than severed.

Next Judge Cudmore found that Carpenter's and Cassidy's Fourth Amendment illegal seizure claims fail as a matter of law because the police officers had probable cause to impound the vehicles pursuant to the ordinance. Plaintiffs do not specifically object to this finding.

Judge Cudmore also found, however, that Niemeyer may have a Fourth Amendment unreasonable seizure claim as a state court presumably found that he had no knowledge that his car was being used for an illegal purpose; a requirement of the ordinance at that time. There appears to be no specific objection to this conclusion in the parties' filings. The only exception is that CEFCU argues that it is unrelated to any of Niemeyer's individual claims.

With respect to Plaintiffs' claim that their Fourth Amendment rights were violated by the *continued* possession by Defendants, Judge Cudmore found that Lee, supra, foreclosed recovery. Plaintiffs object to Judge Cudmore's finding by advocating a different interpretation of Lee – an interpretation that would require reasonableness throughout the City of Peoria's possession of the vehicles.

Judge Cudmore next found that Plaintiffs' Fifth Amendment claims[3] are foreclosed as there is no allegation that they pursued state remedies prior to filing this lawsuit. Plaintiffs argue that § 1983 contains no exhaustion of remedies requirement. Plaintiffs further cite to Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985), for the proposition that "the Supreme Court . . . expressly rejected imposition of any exhaustion of state remedies precondition to a taking claim." Plaintiffs further claim that because they are also entitled to an injunction, their Fifth Amendment claims may proceed.

In moving to Plaintiffs' substantive due process claim, Judge Cudmore found that Plaintiffs' claims reveal a *procedural* rather than a *substantive* claim. In any event, Judge Cudmore found that Plaintiffs failed to allege that their state remedies were inadequate.

---

[3] The Amended Complaint itself does not specifically allege a Fifth Amendment takings claim. Rather, the claim was made in Plaintiffs' response to the Motions to Dismiss [Doc. 36]. In their response, Plaintiffs argued that the City had no legitimate public purpose in seizing their vehicles and handing them over to private actors, CEFCU and Wells Fargo [Doc. 36, pp. 23-24].

Plaintiffs' argument in response to this finding is unclear. Plaintiffs appear to argue that because they are alleging conversion, they have a viable substantive due process claim.

Plaintiffs' procedural due process claims, Judge Cudmore found, could not be dismissed. In so finding, Judge Cudmore noted that Towers did not preclude such a claim and Plaintiffs are not required to exhaust state law remedies. Defendant (City of Peoria) objects to this finding because, it argues, the actions of city employees was "random and unauthorized" and thus Plaintiffs are required to exhaust their state remedies. The City argues that according to the facts laid out in the Amended Complaint, the city actors acted in contravention of the ordinance insofar as they surrendered the vehicles prior to the commencement of foreclosure proceedings.

With respect to Williams and Settingsgaard, Judge Cudmore found that these individuals should be dismissed, in their official capacity, as it is merely duplicative of Plaintiffs' claims against the City. There appears to be no objection to this finding.

Judge Cudmore went on to find that they should not be dismissed in their individual capacity, however, because it would be premature. Judge Cudmore noted that the Amended Complaint alleges that they were responsible for creating and carrying out polices that are alleged to be unconstitutional. In objecting to this conclusion, Williams argues that while the Amended Complaint need not allege detailed facts, it fails to conform with the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2).

Judge Cudmore also found that these Defendants were not entitled to qualified immunity at this stage of the proceedings. While Judge Cudmore acknowledged that such a finding should be made early in the proceedings, he held that deprivations of a constitutionally protected interest in property without adequate notice is a well established right. In objecting to this reasoning,

Williams argues that qualified immunity jurisprudence requires the identification of a more specific right and not the type of general right identified by Judge Cudmore.

With respect to CEFCU, Judge Cudmore held that Plaintiffs' allegations that CEFCU acted in concert with the City of Peoria and its employees to allegedly deprive Plaintiffs of their rights is sufficient to bring it within the umbrella of § 1983. CEFCU objects, arguing that its actions are governed by the loan agreements and Illinois law.

Both CEFCU and the City of Peoria further object to the Report and Recommendation by noting that Judge Cudmore did not address Defendants' arguments with respect to Plaintiffs' state law conversion claim and their claims that the ordinance is facially defective.

Finally, Judge Cudmore found that Wells Fargo's argument that a settlement agreement precludes Niemeyer's claims is an affirmative defense that must be decided on summary judgment. There does not appear to be an objection to this portion of the Report and Recommendation.

Based on these findings, Judge Cudmore recommends that Plaintiff Little's claims be severed from this lawsuit; that the City of Peoria's (and Williams' and Settingaard's in their official capacity) Motion to Dismiss be granted in part and denied in part [Docs. 9, 26]; that CEFCU's Motion to Dismiss be denied [Doc. 27]; that Williams' Motion to Dismiss, in her individual capacity, be denied [Doc. 29]; and that Wells Fargo's Motion to Dismiss be converted into a Motion for Summary Judgment [Doc. 24].

**STANDARD**

A district court reviews *de novo* any portion of a Magistrate Judge's Report and Recommendation to which "specific written objection has been made." Fed.R.Civ.Pro. 72(b). "The district judge may accept, reject, or modify the recommended decision, receive further

evidence, or recommit the matter to the magistrate judge with instructions." Id. However, the Court emphasizes that Rule 72(b) contemplates "specific, written objections to the proposed findings and recommendations [of the magistrate judge]." Id. (emphasis added). Each objection by each Defendant will be taken in turn. The Court notes that no party specifically objects to Judge Cudmore's characterization of Plaintiffs' claims.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view a complaint in a light most favorable to the plaintiff. Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995). The Court must accept all well-pleaded factual allegations and draw all reasonable inferences from those facts in favor of the plaintiff. Richards v. Kiernan, 461 F.3d 880, 882 (7th Cir. 2006). A plaintiff is not required to plead extensive facts, legal theories, or to anticipate defenses. Massey v. Merrill Lynch and Co., Inc., 464 F.3d 642, 650 (7th Cir. 2006). However, a plaintiff must "provide the grounds of his entitlement to relief" that are "more than labels and conclusion [] [or] a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-1965 (2007) (citations and editing marks omitted). In particular, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

**ANALYSIS**

As indicated above, Plaintiffs' federal claims include Fourth Amendment unreasonable seizure claims, Fourteenth Amendment due process claims, and Fifth Amendment takings claims. Plaintiffs also assert that Williams and Settingsgaard are liable in their individual capacities. Finally, Plaintiffs assert that CEFCU and Wells Fargo are liable under § 1983 because they acted in concert with state actors.

FOURTH AMENDMENT CLAIMS

Plaintiffs assert that Defendants[4] not only unreasonably seized their vehicles but also unreasonably retained possession of their vehicles. There has been no specific objection to Judge Cudmore's finding that neither Carpenter nor Cassidy have stated claims for unreasonable seizure of their vehicles. As Judge Cudmore noted, according to the facts in the Amended Complaint, there was probable cause to impound both Carpenter's and Cassidy's vehicles.[5] There also has been no objection to Judge Cudmore's finding that Niemeyer does state a claim regarding the alleged unreasonable seizure of his car (in light of the fact that he was unaware that the vehicle was being used to transport narcotics). Accordingly, Judge Cudmore's recommendation that Carpenter's and Cassidy's Fourth Amendment unreasonable seizure claims be dismissed is hereby ADOPTED.

With respect to the unreasonable retention claim, Judge Cudmore found that this claim was foreclosed by Lee, supra. In Lee, the Seventh Circuit considered, in part, a matter of first impression: "whether . . . a state actor's refusal to return once lawfully obtained property can amount to an unreasonable seizure, or, alternatively, transform a seizure from reasonable to unreasonable" pursuant to the Fourth Amendment. 330 F.3d at 460. The Court specifically rejected the "concept of a 'continuing seizure'" and held that:

> Once an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable. The amendment then cannot be invoked by the dispossessed owner to regain his property. Id. at 466.

---

[4] The Court acknowledges CEFCU's argument that it is not a state actor and therefore not liable under § 1983. This claim will be addressed below; however, for brevity's sake, Defendants will be initially referred to collectively in addressing claims made by Plaintiffs.

[5] Although Judge Cudmore recommended severing Little's claims, that same conclusion would be true for her.

As such, Plaintiffs' claims that the retention of their vehicles implicates the unreasonable seizure clause of the Fourth Amendment is foreclosed and such claims must be dismissed.

Plaintiffs' objections and citation to additional authority is unavailing. Contrary to Plaintiffs' arguments, the Seventh Circuit held that such continuing retention claims could not be brought under the Fourth Amendment – although, whether these claims may be brought under the due process clause will be addressed below. Plaintiffs' citations to Green v. Butler, 420 F.3d 689 (7th Cir. 2005), and Wyoming v. Houghton, 526 U.S. 295 (1999), are unavailing. Green involved a Fourth Amendment challenge to a warrant-less entry into the plaintiffs' house. The Green court outlined the general reasonableness requirements of the Fourth Amendment but did not address the specific continued reasonableness requirement that Plaintiffs advocate and that is foreclosed by Lee. Green, 420 F.3d at 694-695. Similarly, Wyoming involved the reasonableness of a search of a passenger's belongings in a car. The Supreme Court, while outlining general reasonableness requirements, did not address the type of continuing seizure advocated by Plaintiffs. As this Court finds that such a continuing seizure claim is specifically foreclosed by the Seventh Circuit in Lee, Judge Cudmore's recommendation that these claims be dismissed is ADOPTED.

In sum, the only Fourth Amendment claim that survives is Niemeyer's claim that his vehicle was initially seized in an unreasonable manner.

FIFTH AMENDMENT CLAIMS

Plaintiffs allege that the City of Peoria's policy of taking private property, their vehicles, for private use (that is, the use of CEFCU and Wells Fargo) is void. See Kelo v. City of New London, Conn., 545 U.S. 469, 477-478 (2005) (noting that a city "would no doubt be forbidden from taking petitioners' land for the purpose of conferring a private benefit on a particular

private party"). Plaintiffs caption this claim as a Fifth Amendment takings claim. As noted by Judge Cudmore, it should be undisputed that a traditional takings claim, where there was a taking for public use without just compensation, is not ripe if a plaintiff fails to first pursue state remedies. Peters v. Village of Clifton, 498 F.3d 727, 730 n.4 (7th Cir. 2007). Whether Plaintiffs bring such a claim pursuant to § 1983 (which does not require the exhaustion of state remedies) does not absolve them from complying with the ripeness doctrine. Id. As such, if Plaintiffs were alleging such a claim, it should be dismissed pursuant to Rule 12(b)(1) as this Court lacks jurisdiction over an unripe claim.

In challenging this holding, Plaintiffs argue that they are not alleging that private property was taken for public use; rather, they argue that private property was taken by a public entity for private use. As such, Plaintiffs argue that they are not required to first petition the state courts for relief because such an action by the City is void.

The taking of private property for purely private use by a public entity, despite the verbiage employed by Plaintiffs, implicates the due process clause of the Fourteenth Amendment and not the takings clause of the Fifth Amendment. As indicated in the seminal case of Missouri Pac. Ry. Co. v. State of Nebraska, 164 U.S. 403 (1986): "The taking by a state of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the fourteenth article of amendment of the constitution of the United States." Id. at 417. As such, Plaintiffs' claims do not implicate the takings clause and their Fifth Amendment claim must be dismissed.[6]

---

[6] In doing so, the Court specifically acknowledges Plaintiffs' argument that they are not alleging that the private property was taken for public use. If this were the case, then this Court would adopt Judge Cudmore's recommendation entirely.

As such Judge Cudmore's recommendation, that this Fifth Amendment claim be dismissed, is ADOPTED, albeit for different reasons.

FOURTEENTH AMENDMENT CLAIMS

***Substantive Due Process***

As indicated above, Plaintiffs allege that Defendants violated their substantive due process rights by holding the vehicles beyond the initial seizure and by turning over the vehicles to the lien holders. Judge Cudmore found that Plaintiffs' allegations did not raise a substantive due process claim but rather a procedural due process claim. As indicated by Judge Cudmore, Plaintiffs' potential claim that the failure of the ordinance to include an innocent-owner defense is foreclosed by Towers. 173 F.3d at 626. Plaintiffs do not object to this specific conclusion.

Also, as noted by Judge Cudmore, the scope of the substantive portion of the due process clause is narrow and should not be invoked if there is a more particular constitutional amendment that applies. Brokaw v. Mercer County, 235 F.3d 1000, 1017 (7th Cir. 2000). Judge Cudmore then found that Plaintiffs' claims implicate the procedural due process clause; and, even if a substantive due process claim can survive, Plaintiffs failed to make the predicate allegation that they have exhausted state remedies. Lee, 330 F.3d at 467. This Court would also add that because the actions complained of are "regulated by the Fourth Amendment (*even if not clearly within the ambit of the Fourth Amendments' prohibitions*), [] there is no need of the district court to further analyze the case under the strictures of" substantive due process. Kernats v. O'Sullivan, 35 F.3d 1171, 1182 (1994) (emphasis added); See also Belcher v. Norton, 497 F.3d 742, 753-754 (7th Cir. 2007). Besides making due process claims, Plaintiffs assert that their Fourth Amendment rights were violated. Merely because the actions complained of by

Plaintiffs are not *prohibited* by the Fourth Amendment does not automatically convert such claims into substantive due process claims.

Plaintiffs do not spell out their objections to Judge Cudmore's analysis. Rather, they rely on their original brief in response to the motions to dismiss. Merely referring the Court to their previous arguments fails to inform the Court of their "specific objections" to the Magistrate Judge's conclusions of law. As this Court finds that there is no clear error in Judge Cudmore's recommendation it is hereby ADOPTED with respect to Plaintiffs' substantive due process claims. Plaintiffs' substantive due process claims are hereby DISMISSED.

***Procedural Due Process***

Plaintiffs allege that their procedural due process rights were violated in three ways: they were not given notice of the preliminary hearing (and that it is the practice of the City of Peoria to fail to give notice); they did not receive a prompt and meaningful hearing after seizure of their vehicles; and, their vehicles were turned over to lien holders presumably prior to notice and a hearing. Judge Cudmore found that it would be premature to dismiss these claims and that it is too early to tell if the actions were random and unauthorized, which would necessitate the exhaustion of state remedies. In objecting, the City of Peoria argues that the actions of city employees, in turning over the vehicles to lien holders was random and unauthorized as their actions clearly did not comply with the statute.[7]

Plaintiffs essentially argue that the City failed to follow its own ordinance (allegedly because of an unwritten policy or custom) and/or that there was an insufficient amount of notice and hearings prior to the ultimate confiscation of their property. Plaintiffs have at least stated a due process claim or claims. There appears to be no question that some process is due prior to a

[7] Defendant appears to make this argument only with respect to Niemeyer.

deprivation of Plaintiffs' property interest in their vehicles. See e.g. Belcher v. Norton, 497 F.3d 742, 750 (7th Cir. 2007).

The City argues, however, that there is an adequate state remedy which must be pursued prior to the filing of this lawsuit because the facts, as alleged in the Amended Complaint, show that the actions of city officials was random and unauthorized. Parratt v. Taylor, 451 U.S. 527 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327 (1986). The City argues, with respect to Niemeyer's allegations, that city officials failed to follow the ordinance by turning over the vehicle to Wells Fargo prior to receiving written notice that Wells Fargo would pay the impoundment fee and prior to Wells Fargo instituting foreclosure proceedings. As such, the actions of the city were random and unauthorized and Plaintiffs must seek remedies before the state courts. Belcher, 497 F.3d at 750-751 (stating "if property deprivation occurs as a result of a random unauthorized act, it does not constitute a violation of a litigant's procedural due process rights where the state provides 'a meaningful post-deprivation remedy'").

In this case, however, Plaintiffs allege that notwithstanding the text of the ordinance, the City's actual policy is to turn over vehicles to a lien holder without any meaningful process. Thus, Plaintiffs allege that there is an official policy or an unofficial custom that is depriving them of their rights, deprivations that are not the type of random and unauthorized acts advocated by Defendants. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-691 (1978).

The City's objection to the Report and Recommendation merely points out the confluence between Monell and Parratt recognized in Wilson v. Civil Town of Clayton, Ind., 839 F.2d 375 (7th Cir. 1988): "When it is the Town itself that is being sued, and the suit is allowed under Monell because the action was executed in accordance with 'official policy,' the tortuous

loss of property can never be the result of a random and unauthorized act. Therefore a complaint asserting municipal liability under Monell by definition states a claim to which Parratt is inapposite." Id. at 378-379. It may well be that Defendants can show that in fact the action taken with respect to Niemeyer (and Carpenter and Cassidy) represented the actions of individuals that were unauthorized and random and not sanctioned by the City. Such proof, however, would occur after the pleading stage. It is sufficient at this stage of the proceedings for Plaintiffs to merely allege that an official policy or custom deprived them of their property interests without due process of law.

As such, Plaintiffs procedural due process claims will not be dismissed.

INDIVIDUAL CLAIMS

***Official Capacity claims***

There is no objection to Judge Cudmore's finding that Plaintiff's official capacity claims against Williams and Settingsgaard are merely duplicative of their claims against the City of Peoria. Sanville v. McCaughtry, 266 F.3d 724, 732-33 (7th Cir. 2001). As there is no clear error in this conclusion, the recommendation that these individuals be dismissed, in their official capacity, is ADOPTED.

***Individual Capacity Claims and Qualified Immunity***

In order for section 1983 liability to attach to an individual, there must be some allegation that "the individual defendant caused or participated in a constitutional deprivation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (internal citations and quotation marks omitted). As Judge Cudmore pointed out, supervisory liability can be attached if the supervisor knows of the impermissible conduct and "facilitates it, approves it, condones it, or turns a blind eye . . . ." Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988); See also, Nanda v. Moss, 412 F.3d

836, 842 (7th Cir. 2005) (stating that § 1983 supervisory liability may attach "if the conduct causing the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent"). In addition, "if [a] supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act." Armstrong v. Squadrito, 152 F.3d 564, 581 (7th Cir. 1998).

In this case, Plaintiffs allege that Williams created the unconstitutional policy at issue and that Settingsgaard enforced that policy. Plaintiffs have alleged enough to state an individual liability claim against Settingsgaard, who allegedly personally directed the enforcement of the ordinance, policies, or customs. However, Plaintiffs' individual liability allegations against Williams fail to state a claim.

Plaintiffs' individual claims against Williams, to reiterate, are that Williams is the "delegated policy making authority" of the City who created and interprets the ordinance, that Williams acted with Settingsgaard to make policy; and that her actions were the "moving factor" in the impoundment of the vehicles at issue. It should be noted that while Williams may have drafted the impoundment ordinance, the ordinance itself was enacted by the City and not Williams. Thus, Plaintiffs essentially allege that Williams is individually liable because she drafted a policy, adopted by the City, that deprived Plaintiffs of their property. Such an allegation fails to state a claim.

Unlike the allegations against Settingsgaard, there is no allegation that Williams had any supervisory authority over any person who in turn deprived Plaintiffs of their rights. In their response to Williams' Motion to Dismiss, Plaintiffs rely on Armstrong, supra, and Bohlen v. City of East Chicago, Indiana, 799 F.2d 1180, 1188 (7th Cir. 1986). Neither of these cases support Plaintiffs' position. Both cases base liability on supervisory authority. In this case, Plaintiffs

make no allegations that Williams had any such authority, or that she supervised anyone, let alone the individuals who actually deprived Plaintiffs of their vehicles. Armstrong, 152 F.3d at 581. Moreover, Bohlen itself is wholly inapplicable to this case. The Bohlen Court merely indicated that liability can attach to an entity because of the specific acts of employees under a policy or custom theory. Id. at 1188-1189. Bohlen merely reiterated the Monell standard. Neither case stands for the proposition that a person who merely drafts legislation or a policy for a municipal body is liable under § 1983. As such, Plaintiffs' claims against Williams fail as a matter of law.

In light of this conclusion, it is unnecessary to discuss Williams' qualified immunity. However, Settingsgaard, by adopting Williams' arguments, does allege that he is entitled to qualified immunity. Qualified immunity must be determined at the earliest possible time in a lawsuit because it is immunity from suit rather than a defense to liability. Saucier v. Katz, 533 U.S. 194, 200-201 (2001). In order to determine whether Settingsgaard is entitled to qualified immunity, the Court must first ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. At the summary judgment stage, the Seventh Circuit Court of Appeals, in repeating this first question, held that "[f]irst, the plaintiff must present evidence that, taken in the light most favorable to the plaintiff, would allow a reasonable fact finder to determine that he has been deprived of a constitutional right." Washington v. Haupert, 481 F.3d 543, 547 (7th Cir. 2007); See also Mannoia v. Farrow, 476 F.3d 453, 457 (7th Cir. 2007) ("Although the privilege of qualified immunity is a defense, Plaintiff carries the burden of defeating it."). At this stage of the proceedings, of course, the Court need only look to the allegations made in the Amended Complaint.

If the plaintiff has been deprived of a constitutional right, the Court must then ask whether the right was clearly established "in light of the specific context of the case." Saucier, 533 U.S. at 201. As the Supreme Court recently explained:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal citations and quotation marks omitted).

In light of the fact specific nature of this defense, a complaint is generally not dismissed on qualified immunity grounds. Alvarado v. Litscher, 267 F.3d 648, 651-652 (7th Cir. 2001).

The right at question here (or at least the right focused on by the parties) is whether Plaintiffs had a due process right to be secure from the seizure of their vehicles without an adequate level of process. In particular, Plaintiffs allege that Settingsgaard turned over vehicles that were seized to lien holders without due process of law. As indicated above, Settingsgaard may have violated the due process clause by turning over properly seized vehicles to lien holders, who have only a partial interest in the vehicles, without notice and an opportunity to be heard. It now must be determined whether this right was clearly established at the time of the deprivation – that is, was the unlawfulness of the action apparent to a reasonable official.

Plaintiffs have not presented any case, directly on point, that holds that the government may not seize a vehicle and then turn it over to a lien holder instead of the owner with an immediate possessory interest. However, as noted above, Plaintiffs are not required to present a factual scenario identical to their own. At most, Plaintiffs must show that it is clearly established constitutional law that a public official may not turn over properly seized property to another private party without some process. As Judge Cudmore pointed out, there appears to be no doubt

that a vehicle is property and the seizure of which is governed by the due process clause. As noted above, there is a long line of Supreme Court cases which hold that the government may not seize one person's private property for the purpose of conferring a benefit onto another private party, at least not without some process. Kelo v. City of New London, Conn., 545 U.S. 469, 477 (2005) (stating "it has long been accepted that the sovereign may not take the property of A for the sole purpose of transferring it to another private party B, even though A is paid just compensation"); Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 241 (1984) (same); Thompson v. Consolidated Gas Utilities Corp., 300 U.S. 55, 80 (1937) (same).[8] Plaintiffs here alleged that their property was seized by the government and turned over to other private parties without any process whatsoever. Any reasonable official should have known, at the time of the deprivation, that such an action is unconstitutional. At this stage of the proceedings, then, Settingsgaard is not entitled to qualified immunity. Of course, Settingsgaard may seek summary judgment on this issue at any time.

As such, Judge Cudmore's recommendation that Settingsgaard is not entitled to qualified immunity at this stage of the proceedings is ADOPTED. However, Judge Cudmore's recommendation that Williams' Motion to Dismiss with respect to her individual liability claim be denied is REJECTED.

---

[8] Each of these cited cases deal with the takings clause. However, as noted above, the viability of such takings is governed by the due process clause. See Missouri Pac. Ry. Co., 164 U.S. at 417.

***CEFCU***

Plaintiffs (Little, Carpenter, and Cassidy) claim that CEFCU, in concert with the City of Peoria, conspired and deprived them of their property without due process of law.[9] In response, CEFCU argues that its authority to possess the vehicles derives from contract and Illinois law. CEFCU notes that there is no allegation that it was involved in the initial seizure and that it took possession of the vehicles pursuant to loan agreements and Illinois' self-help repossession statutes.

The gravaman of Plaintiff's Complaint with respect to CEFCU is that the city conspired with CEFCU, after the impoundment of the vehicles, to turn over those vehicles to CEFCU prior to owners having an opportunity for a hearing or to pay the towing fees and recover their vehicles. All parties appear to agree that a private party may be subject to § 1983 liability if :

> A plaintiff [can] [] demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the state or its agents." Fries v. Helsper, 146 F.3d 452 (7th Cir. 1998) (internal quotation marks, editing marks, and citations omitted); See also Morfin v. City of East Chicago, 349 F.3d 999, 1003 (7th Cir. 2003); Hanania v. Loren-Maltese, 212 F.3d 353, 356 (7th Cir. 2000).

Thus, Plaintiff needs to allege some joint activity to deprive them of their constitutional rights.

At this stage of the proceedings, this Court cannot find that Plaintiffs have failed to state a claim against CEFCU. Plaintiffs allege that the City turned over their vehicles to CEFCU without due process – that is without notice and an opportunity to be heard. That CEFCU ultimately had the right to posses the vehicles through contract or through Illinois law, while perhaps a successful argument on summary judgment, does not render the Plaintiffs' claims

[9] There is no allegation in the Complaint that CEFCU was involved in the disposition of Niemeyer's vehicle.

infirm. As Judge Cudmore found, the record before the Court is incomplete and would render dismissal of this claim premature.

As such, Judge Cudmore's recommendation that Plaintiff's claims against CEFCU remain is ADOPTED.

***Wells Fargo***

No party objects to Judge Cudmore's recommendation that Wells Fargo's Motion to Dismiss be converted into a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d). As such, Wells Fargo's Motion to Dismiss is DENIED WITHOUT PREJUDICE. Wells Fargo may refile its motion as one for summary judgment consistent with Local Rule 7.1(D).

***Shauntisa Little***

Judge Cudmore recommended that Little's claims be severed from this lawsuit as there are no facts or claims similar to the other Plaintiffs. Little was detained by the Illinois State Police and her car was seized. Her car was then impounded "near Hopedale, Illinois" where CEFCU took possession. There is no allegation that the City of Peoria or its official were involved in any way in the seizure of Little's vehicle or its turn-over to CEFCU. As such, Little's claims against the City of Peoria and Settingsgaard are DISMISSED. In addition, there is also no allegation that CEFCU acted in concert with the City of Peoria or the Illinois State Police or any other state entity, with respect to the seizure of Little's vehicle, such that it may be liable under § 1983. The only remaining claim, then, is Little's state law Conversion claim. This Court has no subject matter jurisdiction over this state law claim and it is DISMISSED WITHOUT PREJUDICE.

REMAINING OBJECTIONS

The final objections relate to Plaintiffs' facial challenge to the statute and their conversion claims. Judge Cudmore did not specifically address these arguments in the Report and Recommendation.

***Facial challenge***

As to Plaintiffs' facial challenge, they assert that the statute, as written, violates the due process clause by failing to give notice and a meaningful opportunity for a hearing. However, it is clear from Plaintiffs' arguments that they are mostly asserting a claim that the statute, *as applied*, failed to provide adequate notice and an opportunity to be heard – that is, the City failed to make sure that actual notice was received by Plaintiffs and failed to actually insure that Plaintiffs received a hearing.

In any event, both parties agree that the due process clause requires an opportunity to be heard in a meaningful time and manner. Mathews v. Eldridge, 424 U.S. 319, 333 (1976); See also City of Los Angeles v. David, 538 U.S. 715, 716-717 (2003). In order to determine whether sufficient process has been accorded, the Court assesses:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved in the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews, 424 U.S. at 335.

As noted above, the ordinance provides that notice is first given to the person in control of the vehicle that the owner is entitled to request a hearing within 12 hours of the seizure. The owner is then notified by certified mail, return receipt requested, at their last known address as listed in the vehicle registration, that they are entitled to request a hearing within 15 days of receipt of the notice (unless they have been given prior written notice). Thus, the owner of the vehicle is given

some minimal notice and an opportunity to be heard on two occasions. If the vehicle is not reclaimed within 30 days of a final administrative decision (or the time in which a judicial review is requested), the vehicle is then disposed of as an "unclaimed vehicle."

Defendants rely, in part, on "the result" in Towers, supra, in their argument that Plaintiffs' facial challenge to the statute fails. In that case, the plaintiffs argued that a statute, similar to the one at issue here, violated their rights and was facially infirm – as here, the Chicago ordinance provided that the owner of a vehicle containing illegal drugs could be assessed a penalty. When such an illegal item is found, police may impound the car and the person who is in control of the car is given a notice that they may request a preliminary hearing. The owner, then, is informed by certified mail, return receipt requested, that they may seek a final hearing on the matter. The thrust of Towers, however, was the applicability of an innocent owner defense. As relates to this case, the district court in Towers found that the ordinance, along with state law remedies, provided adequate post-deprivation notice and an opportunity to be heard consistent with the due process clause. Id. at 622-623.

In assessing this claim, the Seventh Circuit was not so conclusive:

> The district court decided this matter on the pleadings and we therefore have a very meager record upon which to determine whether the procedures set forth in the ordinances provide a constitutionally adequate method of notification. We have sufficient misgivings about the comprehensiveness of the notice provisions in the ordinances to rest our decision on an alternate ground. We need not remand this case for additional proceedings on this point because the plaintiffs before us never alleged either that the officers lacked probable cause to believe the illegal objects were within the vehicles or that the plaintiffs could meet one of the exceptions to liability enumerated in the ordinances. Absent these allegations, there was nothing to contest at a preliminary hearing and therefore no deprivation of due process in its absence. Id. at 629.

Thus, the Seventh Circuit did not clearly indicate that the plaintiffs in Towers *did not* have a viable facial challenge to the ordinance in part because there was nothing to contest at a

preliminary hearing. Here, of course, Niemeyer may have had something to contest – that he had no knowledge of the contraband. There also was no factual scenario in Towers similar to Plaintiffs' allegation here that the City turned over their vehicles to lien holders with no notice and no opportunity to be heard. On this initial record, it appears to the Court that prior to the de facto forfeiture of Plaintiffs' vehicles there would be some requirement in the ordinance that Plaintiffs receive adequate notice that their cars are being "disposed" of and that they be allowed a meaningful opportunity to challenge that disposal. As such, Plaintiffs' facial challenge to the ordinance, with respect to due process will not be dismissed at this time.

***Conversion***

The final argument made by Williams (and consequently Settingsgaard) is that Plaintiffs' conversion claim must fail because Plaintiffs' assertion that Williams created policies that led to a conversion does not state a claim. In order to prevail on a common law conversion claim, Plaintiffs must show that: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." Cirrincione v. Johnson, 707 N.E.2d 67, 70 (Ill. 1998). Williams argues that Plaintiffs did not have an unconditional right to the property and she is not liable because it is only alleged that she created policies which allegedly lead to a conversion (she cannot be liable for the conversion itself).

As Williams has been dismissed from this lawsuit, her arguments regarding conversion need not be addressed. In addition, as Settingsgaard does not make any specific arguments with regard to his liability for conversion, it is unclear on what grounds he would seek dismissal. In any event, Plaintiffs are not required to allege every element of their conversion claim. Rather,

they need only place Defendants on notice of the claims against them. It also appears to the Court, that, absent any binding contrary authority, if Defendants acted in a manner that led to the dispossession of plaintiffs' vehicles without legal authority, they may be liable for the ultimate alleged conversion of the vehicles. See e.g. Wright v. Wilson, 179 Ill.App. 630 (Ill. App. Ct. 1913) ("Every person is liable in trover who personally or by agent commits an act of conversion, or who participates in instigating, aiding, or assisting another, or who benefits by its proceeds in whole or in part." (citation omitted)). As such, this claim will not be dismissed at this stage of the proceedings.

**CONCLUSION**

For the foregoing reasons, Magistrate Judge Cudmore's Report and Recommendation [Doc. 40] is ADOPTED IN PART, REJECTED IN PART and MODIFIED IN PART as indicated above. The Motion to Dismiss filed by the City of Peoria [Doc. 9] is GRANTED IN PART and DENIED IN PART; the Motion to Dismiss filed by Wells Fargo [Doc. 24] is DENIED WITHOUT PREJUDICE; the Motion to Dismiss filed by Settingsgaard [Doc. 26] is DENIED WITHOUT PREJUDICE; the Motion to Dismiss filed by CEFCU [Doc. 27] is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART; and, the Motion to Dismiss filed by Williams [Doc. 29] is GRANTED.

In light of the foregoing, Plaintiff Little's claims against all Defendants, except CEFCU are hereby DISMISSED WITH PREJUDICE. Little's remaining conversion claim against CEFCU is DISMISSED WITHOUT PREJUDICE. The remaining Plaintiffs' Fifth Amendment claims and substantive due process claims are DISMISSED WITH PREJUDICE. Plaintiffs Carpenter's and Cassidy's Fourth Amendment unreasonable seizure claims are DISMISSED WITH PREJUDICE. Plaintiffs' official capacity claims against Williams and Settingsgaard are DISMISSED WITH PREJUDICE. Plaintiffs' individual capacity claims against Williams also is DISMISSED WITH PREJUDICE.

The claims that remain are Niemeyer's Fourth Amendment unreasonable seizure claim; Plaintiffs' procedural due process claims; Plaintiffs' facial due process challenge to the ordinance; Plaintiffs' individual capacity claims against Settingsgaard; and, Plaintiffs' § 1983 claims against Wells Fargo and CEFCU. Wells Fargo is GRANTED leave to file a Motion for Summary Judgment with respect to Niemeyer's claims against it. In addition, Settingsgaard is GRANTED leave to argue in subsequent pleadings that he is entitled to qualified immunity.

As a final note, this Court is troubled by the length of this fact-based Amended Complaint filed by Plaintiffs. Federal Rule of Civil Procedure 8(a)(2) contemplates a "short and plain statement of the claim showing that the pleader is entitled to relief" and not the detailed and fact-specific Amended Complaint that was filed in this case. While Plaintiffs are required to present a Complaint that is not "sketchy," Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007), in federal court, unlike state court, the Rules require notice pleading, not extensive fact pleading. By including an inordinate amount of detail, which spans 28 pages, Plaintiffs have caused Defendants and this Court to expend an inordinate amount of time on what should otherwise be brief Motions to Dismiss. Just as too little may lead to dismissal pursuant to Twombly, supra, too many facts unnecessarily complicate matters at the pleading stage. It is a waste of judicial resources. Had this matter presented itself to the Court without the benefit of a Report and Recommendation, this Amended Complaint would have been dismissed for failure to comply with Rule 8(a).

Entered this 31st day of March, 2008

s/ Joe B. McDade
JOE BILLY MCDADE
United States District Judge