**E-FILED**
Friday, 16 November, 2012  11:45:22 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| THOMAS NIEMEYER, SHUNTISHA CARPENTER, ERICA LITTLE, and JAMES CASSIDY, Individually and as Representatives of Class of Persons Similarly Situated, | ) ) ) ) ) ) | Case No. 07-cv-1103 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| SONNI WILLIAMS, Assistant Corporation Counsel of the City of Peoria, in Her Individual Capacity, STEVEN M. SETTINGSGAARD, Chief of the City of Peoria Police Department, in His Individual Capacity, CITY OF PEORIA, ILLINOIS, an Illinois Local Government Entity, WELLS FARGO FINANCIAL ACCEPTANCE, INC., a Corporation, and CITIZENS EQUITY FIRST CREDIT UNION d/b/a/ CEFCU, a Chartered Credit Union, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# O R D E R   &   O P I N I O N

There are multiple motions before the Court in the present case. First, Defendant City of Peoria has filed a Motion for Summary Judgment. (Doc. 142). Plaintiffs responded to the Motion (Doc. 152), and the City filed a Reply (Doc. 156). Second, Plaintiffs Carpenter and Cassidy filed a Motion to amend a portion of the Motion for Class Certification and file a Second Amended Complaint. (Doc. 146). Third, Plaintiffs' Second Motion for Class Certification (Doc. 115), with their

supporting Memorandum (Doc. 116), is before the Court, as is the City of Peoria's Response (Doc. 122). Each Motion is addressed in turn below.

## PROCEDURAL HISTORY

Plaintiff Niemeyer filed the present case on April 27, 2007, raising a long list of claims against multiple defendants. (Doc. 1). Additional plaintiffs were added in the Amended Complaint filed August 10, 2007. (Doc. 23). Plaintiff Little was dismissed on March 31, 2008, leaving three plaintiffs. (Doc. 56). Plaintiffs challenge Defendant City of Peoria's alleged policy of giving impounded vehicles to the respective lienholders without notice or allowing the owners to reclaim their vehicles, in violation of the City's impoundment ordinance. (Doc. 23). Plaintiffs state their claims on behalf of a class of people similarly situated, but their first request for class certification was denied on September 23, 2010. (Doc. 97). A Second Motion for Class Certification was filed on September 16, 2011. (Doc. 115).

Some of Plaintiffs' claims were dismissed following Defendants' Motions to Dismiss. (Doc. 56). Others were dismissed sua sponte upon Plaintiffs' failure to show cause why three of their claims had sufficient factual and legal basis. (Doc. 107). Claims against Defendant Wells Fargo were dismissed on summary judgment, which was uncontested by Plaintiff. (Doc. 131). Defendant Citizens Equity First Credit Union (CEFCU) was dismissed from the case by stipulation. (Doc. 147). As a result of these prior orders, the City of Peoria is the sole defendant remaining in this case,[1] and only two claims have survived: a procedural due process claim brought pursuant to 42 U.S.C. § 1983, and a state law conversion claim. On

---

[1] Hence, further references to "Defendant" refer to City of Peoria unless otherwise stated.

December 29, 2011, Defendant filed a Motion for Summary Judgment on these remaining two claims. (Doc. 142).

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the Court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## IMPOUNDMENT ORDINANCE

Because the impoundment ordinance in the Code of the City of Peoria is central to this case, and is not readily accessible, the Court will lay out the relevant

provisions before turning to the facts. All three Plaintiffs had their vehicles impounded pursuant to the same ordinance, Code of the City of Peoria, Illinois § 20-106, entitled "Use of motor vehicle in possession and/or delivery of controlled substances and/or drug paraphernalia."[2]

The City of Peoria enacted this ordinance in 1998. A certified copy of this first version is on record with the Court (Doc. 101-1), and differs from Plaintiffs' submitted version only in insignificant detail, so is taken as undisputed. This version was in force from 1998 until July 2005; therefore, it applies only to Plaintiff Niemeyer's impoundment. The ordinance provided that:

> (b)(1) A motor vehicle used, with the knowledge of the owner of record, in the possession or delivery of a Controlled Substance or Drug Paraphernalia, in violation of the Illinois Controlled Substances Act, the Cannabis Control Act, or the Drug Paraphernalia Control Act, shall be subject to seizure and impoundment under this subsection. The owner of record of such vehicle shall be liable to the City for a penalty of Five Hundred Dollars ($500.00), in addition to fees for the towing and storage of the vehicle.
> (b)(2) Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the City of [sic] its agents.

§ 20-106.

To summarize the procedures after a vehicle was impounded, the police officer who initially had the vehicle towed was to notify the person in control of the vehicle of the owner's right to request a preliminary hearing. § 20-106(b)(2). If the owner requested a preliminary hearing within twelve hours, one would be held within twenty-four hours of seizure to determine probable cause. § 20-106(b)(3). If

---

[2] Because Plaintiffs' Second Motion to Certify Class is denied below, this is the only relevant section, despite Plaintiffs' attempt to challenge similar Peoria ordinances.

there were no probable cause, the vehicle would be released without costs. *Id.*
Separately, within ten days, the City was to notify the owner of record of a hearing
to evaluate the impoundment, apparently held automatically even if the owner did
not request it, which would be held within thirty days. § 20-106(b)(4). The hearing
officer would determine by a preponderance of the evidence whether the vehicle was
used as described in subsection (b)(1); if not, the vehicle was returned. *Id.*

Regarding lienholders, the section provided:

Notwithstanding any other provision of this section, whenever a person
with a lien or [sic] record against a vehicle impounded under this
section has commenced foreclosure proceedings, possession of the
vehicle shall be given to that person if he or she agrees in writing to
refund to the City the net proceeds of any foreclosure sale, less any
amounts necessary to pay all lienholders of record, up to the total
amount of penalties and fees imposed under this subsection (d) [sic].

*Id.* The vehicle would also be disposed of if not claimed after a certain time. § 20-
106(b)(5).

In July 2005, § 20-106 was amended, to the version applicable to Plaintiffs
Carpenter and Cassidy.[3] This version was submitted by Plaintiffs as an exhibit to
the first Complaint (Doc. 1-2). Although Defendant denies that this is a true copy in
its Answer (Doc. 57 ¶ 47), it also admits that the exhibit is the ordinance as
amended (Doc. 57 ¶ 46). There also appears to be no dispute about the relevant
provisions. In fact, in a prior filing with this Court, Defendant's quote of the most
pertinent section, the part of § 20-106(b)(4) dealing with giving vehicles to
lienholders, does not materially differ from Plaintiffs' version. (*See* Doc. 101 at 4).
Therefore, the Court finds that the material provisions of the version of § 20-106

---

[3] It was amended again after the present case began, so the version applicable to
these Plaintiffs is also not the current version of the Code.

applicable to Plaintiffs Carpenter and Cassidy are undisputed, and are contained in Plaintiffs' exhibit to their complaint (Doc. 1-2).

The most significant change in this later version was that the use of the vehicle no longer had to be with the owner's knowledge. § 20-106(b)(1). However, two defenses were added: there would be no violation if either the vehicle was reported stolen, or the vehicle was operating as a common carrier. § 20-106(b)(7). Procedurally, the City was given seventy-two hours to hold a preliminary hearing if the owner requested one. § 20-106(b)(3). The later preponderance of the evidence hearing was no longer automatic, but had to be requested by the owner, and the City had forty-five days from the request to hold a hearing. § 20-106(b)(4). The provision allowing for a lienholder to obtain possession was unchanged, except for the correction of a typo. *Id.*[4]

### FACTUAL BACKGROUND[5]

Plaintiff Niemeyer owned a Dodge Durango subject to a secured loan from Wells Fargo. The loan agreement required that Niemeyer "keep the Collateral free from claims of others, whether or not justified (for example, forfeiture or seizure for alleged illegal acts . . .)." (Doc. 117-2 at 6). Upon default, Wells Fargo was entitled to

---

[4] When citing § 20-106 in the remainder of this Opinion, where the two versions differ, the Court will note that it is referring to either the earlier version ("Niemeyer version") or the later version ("Carpenter/Cassidy version"). Otherwise the Court will simply cite the section.

[5] Unless otherwise indicated, these background facts reflect the Court's determination of the undisputed facts, and are drawn from the Amended Complaint, Defendant's Answer, and the parties' statements of facts filed regarding the Motion for Summary Judgment. All genuine disputes and reasonable inferences are taken in Plaintiffs' favor, as noted above.

repossess the vehicle under the agreement. (Doc. 117-2 at 5).[6] On April 27, 2005, five men, not including Niemeyer, used Niemeyer's vehicle to transport drugs, resulting in its impoundment by the Peoria Police Department. Niemeyer maintains the car had been stolen, and he did not know the driver of his vehicle. (Doc. 152-1 ¶¶ 7-8). On May 6, 2005, Defendant released Niemeyer's vehicle to Wells Fargo, who had paid the $500 impoundment fee to Defendant.

Niemeyer requested an administrative hearing under § 20-106(b)(4) to determine the validity of the impoundment. On June 8, 2005, a City hearing officer upheld the impoundment of Niemeyer's vehicle. Niemeyer then filed a complaint in the Circuit Court of Peoria County, challenging that determination. The court determined that the hearing officer did not make the required finding that Niemeyer had knowledge of the vehicle's use, and directed Defendant to make "all reasonable efforts" to return the vehicle to Niemeyer. However, Wells Fargo had subsequently sold the vehicle, and Defendant was not able to return the vehicle to Niemeyer.

Plaintiff Carpenter owned a vehicle subject to a lien by CEFCU. Carpenter's agreement required that "Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance."[7] (Doc. 142 at 10). In the event of default, the agreement allowed CEFCU to declare the full loan immediately due and to take "immediate possession of the motor vehicle, with or without judicial process." (Doc.

---

[6] Plaintiff lists the loan terms as disputed facts, but only inasmuch as they ignore any potential good faith requirement. Thus, Plaintiff does not seem to dispute that these terms are stated in the note and security agreement.

[7] Again, Plaintiffs dispute the implication of this, not the terms itself, alleging that the agreement did not allow for immediate possession, and required a good faith interpretation.

142 at 10). On January 31, 2007,[8] Carpenter's vehicle was seized and impounded after Peoria Police executed a warrant for her residence and the person of her boyfriend. In the process, a small amount of marijuana was found in her purse, which had been in the vehicle when the police arrived. Plaintiff Carpenter claims she was told at that time that her vehicle was "going back to CEFCU." (Doc. 153-1 at 6). CEFCU was notified of the impoundment, paid the $500 fee, and obtained the vehicle from Defendant. This allegedly took place on February 2, 2007. Carpenter was notified of the impoundment, and attempted to retrieve her vehicle beginning on February 3, 2007, which is when she claims she was first notified that CEFCU had her vehicle. Carpenter claims she did not request a hearing because she thought it would be meaningless, as her car had been given to CEFCU. (Doc. 23 ¶ 28). In December 2007, after the present case was filed, Carpenter received her vehicle back from CEFCU.

Plaintiff Cassidy also owned a vehicle subject to a lien held by CEFCU. The loan terms prohibiting use of his vehicle in violation of law or ordinance and allowing for repossession upon default are identical to those in Carpenter's loan agreement. (Doc. 142 at 13). On August 9, 2007, Cassidy's vehicle was stopped by Peoria Police for the purpose of executing an arrest warrant on the driver, a man named Isiah Foster, and was impounded because the police found marijuana in the passenger's purse. Plaintiff was not present, and he claims he had loaned the

---

[8] Though material, the dates regarding Carpenter's case are not stated in the summary judgment filings, so are not necessarily undisputed. The Court, in viewing the evidence in the light most favorable to Plaintiff, uses the dates stated in Carpenter's deposition (Doc. 153-1).

vehicle to Foster and did not know of his intended use. (Doc. 152 at 8).[9] On August 10, 2007, Cassidy contacted the Peoria Police Department to attempt to retrieve his vehicle. He was told he could pick up his car if he arrived at the station before 2:00 pm and paid the $525 owed to the City and the separate fees at the storage yard. However, Cassidy asserts that when he arrived as instructed and attempted to pay the fee to retrieve his car, the "information officer" told him that only CEFCU would be allowed to take possession of his vehicle. (Doc. 152 at 9). CEFCU took possession of Cassidy's vehicle on an unknown date, and returned it to him in March 2008.

SUMMARY JUDGMENT ANALYSIS

## I. Procedural Due Process

Plaintiffs bring a claim for relief pursuant to 42 U.S.C. § 1983. Under that statute, a plaintiff may bring a cause of action based on a deprivation of constitutional rights or privileges resulting from state action. *See*, *e.g.*, *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011). Plaintiffs allege that Defendant violated the Due Process Clause of the Fourteenth Amendment by maintaining a policy that failed to provide proper procedure before depriving them of the property interest in their vehicles.

---

[9] Defendant lists this fact as disputed. (Doc. 156 at 2). However, Defendant, in its Answer, failed to deny this and other facts related to Plaintiffs Carpenter and Cassidy. (S*ee* Doc. 57 ¶¶ 22-28, 37-44) (making "no answer" to the claims)). Under Federal Rule of Civil Procedure 8(b)(6), these matters could be deemed admitted and Defendant should be estopped from denying them now. Because, for the purposes of this summary judgment motion, there is no significant distinction between viewing the facts in the light most favorable to Plaintiffs and deeming the facts admitted, the Court simply notes this oversight, as it does not impact the Court's present decision.

The analysis of a procedural due process claim requires two steps. First, Plaintiffs must have been "deprived of a protected interest." *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Second, the Court must determine what process is due, balancing the costs and benefits of additional procedural safeguards. *Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir. 1982).

For a municipality to be liable for a constitutional violation under § 1983, it must be the result of a policy or custom of the city. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).[10] Such a policy or custom can be shown in three ways: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). The Court addresses each part of the analysis in turn below.

## A. Protected Interest

Plaintiffs all had a protected property interest in their vehicles. When a person is deprived of his or her vehicle, even if it is not permanent, he or she is deprived of a property interest. *Sutton*, 672 F.2d at 645. The use of one's vehicle is a protected property interest in itself. *See Gable v. City of Chicago*, 296 F.3d 531, 539 (7th Cir. 2002); *see also Graff v. Nicholl*, 370 F. Supp. 974 (N.D. Ill. 1974) (recognizing a protected interest in the "uninterrupted access to and use of one's automobile"). In this case, there is the initial deprivation—the impoundment of

---

[10] Plaintiffs also initially raised a claim for liability under a *respondeat superior* theory, which is clearly foreclosed by *Monell*. 436 U.S. at 694.

Plaintiffs' vehicles—followed by a separate deprivation when Defendant turned their vehicles over to the lienholders. These deprivations will be considered separately when determining the process due.

## B. Process Due

The second prong of the analysis, of what process is due, is flexible, and "hinge[s] upon the particularities of the situation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002). Procedural safeguards are evaluated under the balancing test laid out originally in *Mathews v. Eldridge*, 424 U.S. 319 (1976), under which a court weighs the interest and value of the safeguards against the government's interest in efficiency and reducing costs. The standard procedural safeguards provided when process is due are notice and an opportunity to be heard. *See, e.g.*, *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). Post-deprivation procedures may be adequate where it is impractical to provide procedural protections before the action is taken. *See Sutton*, 672 F.2d at 646-47.

In weighing the benefit of additional procedures for a particular complainant, if there was nothing to contest in the process, there is no deprivation even if no hearing is held. *Towers v. City of Chicago*, 173 F.3d 619, 629 (7th Cir. 1999). In *Towers*, a similar impound ordinance was evaluated by the Court of Appeals, which ruled on the narrow grounds that the plaintiffs did not allege any basis to contest an impoundment. *Id.* Thus, if Plaintiffs do not contest the validity of their deprivations, they cannot complain of a lack of procedure.

Before analyzing the process due to Plaintiffs, an initial matter must be addressed. Defendant relies heavily on a statement by Magistrate Judge Cudmore

in a Report and Recommendation that there was probable cause for the impoundment. (Doc. 40 at 11). That portion of the Report and Recommendation was adopted by this Court. (Doc. 56 at 12-13). Though perhaps not with the utmost clarity, the Court, in the context of evaluating Plaintiffs' Fourth Amendment claims, was simply assessing the probable cause to initially seize Plaintiffs' vehicles. The City Code required probable cause to believe the impoundment ordinance was violated for the officer to initially tow the vehicle to City property. § 20-106(b)(2). However, the City needed more than that initial probable cause to impound the vehicle under the statute. There must have been a determination that the vehicle was used in violation of subsection (b)(1), and presumably that it was not subject to a defense in subsection (b)(7). *See* § 20-106(b). Also, as Judge Grawey of the Peoria Circuit Court held in Plaintiff Niemeyer's appeal of his impoundment, the City had to find knowledge of the owner to properly impound the vehicle under the version applicable to Plaintiff Niemeyer. Thus, this Court did not find the impound ordinance was followed or satisfied, but simply held that the initial seizure and tow were not in violation of the Fourth Amendment; Defendant's reliance upon a reading to the contrary is misplaced.

## 1. Impoundment Deprivation

Regarding the initial deprivation, the impoundment of Plaintiffs' vehicles, Plaintiffs were afforded all the process that was due to them. In fact, it is not even clear that they are contesting the process surrounding impoundment itself, as they do not suggest any additional procedures that would prevent error. It is well-established that some procedure is required when a vehicle is impounded. *See*, *e.g.*,

*Sutton*, 672 F.2d at 648; *Summers v. State of Utah*, 927 F.2d 1165, 1169 (10th Cir. 1991); *Draper v. Coombs*, 792 F.2d 915, 923 (9th Cir. 1986). Where procedures are not provided before impoundment, post-deprivation procedures may be adequate if prompt action is called for and the procedures afford the opportunity to challenge the impoundment and fees. *See, e.g.*, *Miller v. City of Chicago*, 774 F.2d 188, 189-192 (7th Cir. 1985). Here, finding illegal drugs in a vehicle likely justifies prompt action, without procedural safeguards in advance of impoundment. *Cf. Sutton*, 672 F.2d at 646-47 (finding no pre-impoundment procedure required before towing illegally parked cars). The ordinance provides for notice and an opportunity to be heard to challenge the impoundment after the fact. Plaintiffs do not claim they were denied that procedure. Ignoring the impact of the separate transfers of possession to the lenders, if successful at a hearing, they would have received their vehicles back without having to pay the impoundment fees. § 20-106(b)(4). This satisfies due process.

Moreover, each Plaintiff was afforded proper procedure under the circumstances. Plaintiffs Cassidy and Carpenter have no basis to complain about any lack of process because, based on the undisputed facts, their vehicles had properly been impounded under § 20-106 and had nothing to challenge at a hearing. In Plaintiff Carpenter's case, the police, in executing a search warrant, found cannabis in her purse. The purse had been in the vehicle. Similarly, police stopped Plaintiff Cassidy's vehicle and found marijuana in a purse that had been inside it. Neither Plaintiff alleges their vehicle had been reported stolen or that they were common carriers. Thus, impoundment of these Plaintiffs' vehicles was valid.

Because there was nothing to contest at a hearing, any alleged lack of process was not a violation of procedural due process. *See Towers*, 173 F.3d at 629.

Plaintiff Niemeyer also received all process due to him. Niemeyer maintains that he did not have knowledge as required by § 20-106(b)(1) (Niemeyer version), and his vehicle was improperly impounded. In fact, Niemeyer's invocation of the procedures available to him supports such a conclusion. Niemeyer challenged the city hearing officer's determination that the impoundment was proper, and the Circuit Court of Peoria County agreed with him as there had been no finding of Niemeyer's knowledge, as required under the Code. Presumably, had Niemeyer's car not been turned over to Wells Fargo, a separate and more problematic deprivation considered below, these procedural protections would have resulted in the return of his vehicle without having to pay the impound fees. Niemeyer had the opportunity to challenge the impoundment, and did so; thus, there was no procedural due process violation. Any inadequacy of the post-impoundment procedure for obtaining relief was the result of the later, separate deprivation, not of the original impoundment. Therefore, to the extent Plaintiffs claim a procedural due process violation regarding the initial impoundment, summary judgment is granted to Defendant and that ground is dismissed.

## 2. Transfer of Possession Deprivation

The Court now turns to the distinct deprivation that Plaintiffs appear to more aptly challenge: Defendant's transfer of Plaintiffs' vehicles to the possession of the lienholders without any notice or an opportunity to contest the validity of that action. Even where an impoundment is legal, a municipality's actions subsequent to

the impoundment may give rise to separate due process requirements. *See*, *e.g.*, *Kohn v. Mucia*, 776 F. Supp. 348, 357 (N.D. Ill. 1991). Here, the deprivation is the loss of use or complete loss of the vehicle resulting from Defendant turning Plaintiffs' vehicles over to the lienholders instead of returning it to the owners. Plaintiffs' opportunity to pay the requisite fees to recover their vehicles, as the City Code provided for, was extinguished.

Regarding Plaintiff Niemeyer's claim, Defendant's sole argument as to why it is entitled to judgment as a matter of law is that because Niemeyer did not contest Defendant Wells Fargo's Motion for Summary Judgment, he thereby admitted all undisputed material facts in Wells Fargo's Motion. (Doc. 142 at 6). One of the facts Wells Fargo listed as undisputed was that Wells Fargo was authorized to repossess the vehicle based on the breach of the note and security agreement. (Doc. 117 ¶ 10). Plaintiff Niemeyer responded to Wells Fargo's motion with a document stating he did "not contest the motion for summary judgment . . . and concedes an Order may be entered granting the motion for summary judgment for this defendant without prejudice to the claims against the other defendants." (Doc. 125 at 1-2). As a result, Wells Fargo's Motion was granted. (Doc. 131).

Though Plaintiff's counsel should have been clearer in his Response to Wells Fargo's Motion, this Court is unwilling to interpret his unorthodox filing as an admission of every statement contained in Wells Fargo's Motion. If his intent was to stipulate to the dismissal of Wells Fargo as a party,[11] the proper method would have

---

[11] This intent is inferred from both Plaintiffs' specific qualification that the concession was "without prejudice" to his other claims, (Doc. 125 at 2), and Plaintiffs' counsel's statements during the deposition of Plaintiff Carpenter, that he

been to do so outright, as in a Rule 41(a) voluntary dismissal. Moreover, even if Niemeyer were deemed to have admitted all of the facts in Wells Fargo's Motion, the simple fact that Wells Fargo was entitled to repossess Niemeyer's vehicle under the contract did not mean Defendant was entitled to turn it over to them. As discussed below, Defendant's actions depriving Plaintiffs of property likely required some procedural safeguards. Under its ordinance, the City could only turn vehicles over to lienholders after they had filed foreclosure proceedings. § 20-106(b)(4). There is nothing in the record to suggest Wells Fargo had filed foreclosure proceedings against Niemeyer prior to obtaining possession of the vehicle. Thus, Niemeyer can still challenge Defendant's transfer of possession of his vehicle to Wells Fargo.

Similarly, Defendant's sole argument for why Plaintiffs Cassidy and Carpenter must lose is that CEFCU was entitled to immediate possession under the loan agreement. (Doc. 142 at 6) This does not address the fact that the City Code did not entitle CEFCU to immediate possession, or the possibility that the Due Process Clause may have required procedural protections before Defendant gave Plaintiffs' cars to the lienholders.

In Plaintiffs' Response, they argue that even if the lienholders were entitled to repossess the vehicles, there are procedural requirements when a state actor aids in repossession. (Doc. 152 at 12-14). Defendant did not respond to this argument in their Reply. Where the government aids in a private repossession, creating state action, the requirements of procedural due process are triggered. *Cf. Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004) (finding state action and potential

---

"filed a no contest" to Wells Fargo's Motion, to allow Wells Fargo "out of the case." (Doc. 153-1 at 2).

§ 1983 liability based on police officer's active assistance in repossession). Regarding what constitutes state action, "the overarching lesson of the case law is that officers . . . may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance." *Id.*; *see also Johnson v. City of Evanston, Ill.*, 250 F.3d 560, 562 (7th Cir. 2001) ("The Constitution's requirements are as applicable to the police when they choose sides in a dispute among citizens as when they seize evidence for use in criminal prosecutions.").

Although this case is factually dissimilar from the many cases addressing police officer assistance at the scene of a repossession, it is arguably worse and is more clearly state action. When a police officer is on the scene of a private repossession, he or she could merely be there as an observer, which would not constitute state action. Here, the City acted under color of state law when actively seeking out the lienholders to notify them of the impoundment, and allowing them to take possession of the vehicles, after payment of the impound fees to the City, and in all three cases before Plaintiffs had the opportunity to challenge even the initial impoundment. It is not as if the lienholders had located Plaintiffs' vehicles of their own endeavors and privately repossessed the vehicles from an unguarded public lot. Defendant took it upon itself to determine that the lienholders had the superior claim to the vehicles, without notice and an opportunity to be heard and without following the City Code. Plaintiff Cassidy's assertions that he was not allowed to take his vehicle back when he was present and prepared to pay the required fees are even more cause for concern. With the state action and a deprivation of Plaintiffs' property interests, it appears some process was due.

Plaintiffs argue that they neither expected Defendant's actions nor had the opportunity to challenge them. Had Plaintiffs been given the opportunity to contest these actions, they could have argued that the City was not authorized to give the vehicles to the lienholders under § 20-106. They also could have challenged the right of the lienholders to repossess the vehicles in the first place: Plaintiffs argue that their respective loan agreements were subject to a good faith application, such that de minimis violations like impoundment after Niemeyer's vehicle was stolen or after finding a small amount of marijuana in Carpenter's purse would not provide a substantial enough breach to warrant acceleration of the loan and repossession. However, Plaintiffs did not have notice or an opportunity to be heard.

## C. Municipal Liability

For Defendant, as a municipality, to be liable under § 1983, the actions complained of must have been pursuant to a policy or custom. *Monell*, 436 U.S. at 694. Defendant does not address this requirement in its Motion, and does not seek summary judgment on this ground.[12] Plaintiffs have alleged that Defendant had a policy of turning impounded vehicles over to lienholders without notice to the owners and without requiring foreclosure proceedings to be filed first as stated in the ordinance.[13] The facts alleged seem to support such a conclusion.

---

[12] As such, the Court will not analyze or grant judgment on this issue, and it will be left for trial. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.").

[13] Although Plaintiffs have conceded that the ordinance is constitutional on its face, (Doc. 100 at 3), the Court questions whether that is true. If it is unconstitutional to give the vehicles to the lienholders without notice and a hearing, the mere filing of

In short, the Court denies summary judgment of this claim because Defendant has failed to demonstrate that it is entitled to judgment as a matter of law. Plaintiffs have provided sufficient factual evidence to raise a genuine issue as to whether they were entitled to more procedural protections of their property rights than they were afforded, which in this case appears to be none, thus allowing a reasonable jury to find they were deprived of their property interests in their vehicles without due process of law. In fact, based on the undisputed facts, the Court is inclined to grant judgment in favor of Plaintiffs on the limited issue of whether they were entitled to process before Defendant gave their vehicles to the lienholders. Under Rule 56(f), the parties are entitled to notice and a reasonable opportunity to respond before the Court takes such action. The parties are hereby on notice that the Court is considering entering judgment and are invited to file a response in opposition or support of such a ruling within twenty-eight days of the date of this Order. If the Court rules on this issue, only the issue of municipal liability and damages would remain for trial.

## II. Conversion

Plaintiffs' other claim is one of conversion, based on the allegedly wrongful dispossession of their cars upon Defendant's transfer of possession to the lienholders. To state a claim for conversion under Illinois law, a plaintiff must prove four elements: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a

---

foreclosure proceedings would not seem to change that conclusion. Anyone can file foreclosure proceedings—that alone is no indication of the right to repossess collateral.

demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Defendant argues that Plaintiffs cannot show the second and fourth elements of a conversion claim, so are not entitled to relief. (Doc. 142 at 6). Though Defendant's argument on this claim is brief, Plaintiffs' is nonexistent—nowhere in their Response do Plaintiffs address a legal argument for their conversion claim.

Based on the undisputed facts, Defendants have shown that Plaintiffs are not entitled to relief as a matter of law. Even where repossession is determined to have been wrongful, if the unconditional right to possession is not proven, there can be no claim for conversion. *See First Chi. Gary-Wheaton Bank v. Gaughan*, 655 N.E.2d 936, 944 (Ill. App. Ct. 1995). Here, even assuming the vehicles were wrongfully transferred to the lienholders, Plaintiffs would still be required to either pay the impoundment fee and other fees required by the ordinance or successfully challenge the impoundment before they would be entitled to possession of their vehicles. Because some steps would be required before possession, Plaintiffs have not alleged facts that could prove an unconditional right to immediate possession of their vehicles. Thus, their claim for conversion fails, and Defendants are entitled to judgment as a matter of law on this claim.

### MISCELLANEOUS MOTIONS RELATED TO DISMISSAL OF CEFCU

Plaintiffs Cassidy and Carpenter moved to amend the Motion for Class Certification and file a Second Amended Complaint to remove claims against CEFCU. (Doc. 146). After filing that Motion, CEFCU was dismissed as a party by

stipulation. The Court grants Plaintiffs' Motion to modify the Motion to Certify Class, and as a result will not consider class definitions 1(B) and 2(C) or Parts A(2) or B(3) of their brief, as Plaintiffs wish to withdraw them.

However, Plaintiffs' Motion to file a Second Amended Complaint is denied. A court "should freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(3). However, justice does not require the amendment of Plaintiffs' Complaint. There appear to be no new facts or claims in the proposed Second Amended Complaint. It is unnecessary to file a new complaint to remove the dismissed parties and claims—the Court's dismissal orders are sufficient. Although the Court appreciates Plaintiffs' desire for a more concise Complaint, the proposed Second Amended Complaint is already inaccurate as the claims have been even further narrowed in this Opinion and Order. If this case proceeds to trial, a final pretrial order will supersede all prior filings in any event. Therefore, Plaintiffs' Motion to File a Second Amended Complaint is denied.

## MOTION TO CERTIFY CLASS

Plaintiffs once again seek to have a class certified in this case under Federal Rule of Civil Procedure 23. They seek two alternatives for certifying classes of individuals with claims against Defendant, and seek only to certify the class to determine liability leaving damages for later resolution. (Doc. 115 at 1). Alternative 1 is one class of "those persons who owned vehicles that were impounded by the City of Peoria Police Department in the period from April 27, 2005 and thereafter . . . whose vehicle was delivered to the lender . . . before an opportunity for a meaningful hearing concerning the Police Department's impoundment" ("Class 1").

(Doc. 115 at 2). Alternative 2 is to have two separate classes. The first would be represented by Plaintiff Niemeyer, and consists of "those persons who owned vehicles that were impounded by the City of Peoria Police Department in the period from April 27, 2005 and thereafter . . . whose vehicle was delivered to the lender . . . prior to being afforded a meaningful opportunity to be heard on the Police Department's impoundment" ("Class 2-A"). (Doc. 115 at 2). The second class would be represented by Plaintiffs Cassidy and Carpenter, and would consist of people whose vehicles were impounded and "whose vehicle was delivered to the lender . . . before being provided notice of the Police Department's impoundment and notice of a meaningful opportunity to be heard on the matter" ("Class 2-B"). (Doc. 115 at 2-3).

Under Rule 23(a), there are four requirements for a representative to sue on behalf of a class:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Each of these requirements must be satisfied before a class will be certified. *See Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009). The burden is on Plaintiffs to demonstrate that the Rule 23 requirements are satisfied and the class should be certified. *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976). Plaintiffs, in their second Motion, have failed to mend the faults with the first Motion for Class Certification, and have failed to prove the numerosity and adequacy requirements are met.

**A. Numerosity**

Although the exact numbers of a class need not be proven, the class representatives do need to prove the class is sizeable enough to make joinder impracticable. *Kohn*, 776 F. Supp. at 353. Speculation as to the size of the class is not sufficient. *See Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 956 (7th Cir. 1989). For each of the classes proposed by Plaintiffs, there could potentially be a sufficient number of members that joinder would be impracticable; however, Plaintiffs' evidence is speculative and they fail to prove this requirement is met.

The primary support for Plaintiffs' numerosity argument is six spreadsheets showing the names, car descriptions, and dates for impounded vehicles, and whether the fine was paid.[14] This is the same data filed to support Plaintiffs' first Motion, which was denied. Despite suggestion from the Court that discovery could yield data that would better demonstrate a sizeable class, such as whether the lienholder or owner paid the impoundment fee, (Doc. 97 at 11), Plaintiffs have apparently failed to request such information, which Defendant contends does exist (*see* Doc. 122 at 4).

Plaintiffs assert that 4,444 cars were impounded[15] by the City during the relevant time period, (Doc. 116 at 13), but the Court did not find the same number when counting the vehicles listed in the spreadsheet.[16] Plaintiffs then used "sampling" to determine the number that were abandoned, and therefore not impounded pursuant to one of the ordinances Plaintiffs attempt to challenge. (Doc.

---

[14] These spreadsheets were filed on a cd, and are not available on CM/ECF.

[15] They use the word "repossessed," but because the data only shows the number of cars impounded, the Court assumes that is a mistake.

[16] The Court counted 4,529 vehicles impounded after April 27, 2005.

116 at 14). This sampling seems to be based on an assumption that every car impounded was given to a lienholder, which is proven false even by the scant evidence submitted for this Motion. Assuming the policy alleged by Plaintiffs to be true, that Defendant required the lienholders to pay the impoundment fees as happened in all three Plaintiffs' cases, those vehicles that were impounded but were not released after full payment of the fees would not have been given to the lienholders. The fees were never fully paid for about one-third of the impounded vehicles. Of the vehicles that were released after full payment, the information provided by Plaintiffs does not indicate whether the owner, lienholder, or other party paid the fees. Plaintiffs do not attempt to explain how they would determine which impounded vehicles were recovered by lienholders, or whether the owner received notice regarding the vehicle's disposition. Regarding Classes 2-A and 2-B specifically, Plaintiffs also do not explain how they know the number of individuals whose vehicle was given to the lender either prior to receiving notice or after receiving notice but before a meaningful hearing, as there is no evidence of when the vehicles were recovered, by whom, or when notice or a hearing were received.

There is an additional problem with determining numerosity of the class, as CEFCU pointed out in their response to this Motion before they were dismissed out of the case: after the Court denied Plaintiffs' first Motion for Class Certification, the statute of limitations on the claims of class members began to run again. *See Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011) ("Tolling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action—which may be because the judge rules adversely to

the plaintiff."). Plaintiffs' Second Motion for Class Certification was filed almost a year later. The statute of limitations applicable to Plaintiffs' § 1983 claim is two years. *Jenkins v. Village of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). This means that perhaps as many as half of the purported class members may have their claims barred by the statute of limitations, further complicating a determination of how large the class is.

The only thing that appears to have substantial support is that 71 impounded vehicles were given to CEFCU from the City during the relevant time period pursuant to Defendant's alleged policy. (Doc. 87; Doc. 86-3). Because the potential class against CEFCU was withdrawn, this number no longer has direct significance, but it could be used to support a conclusion that the number of vehicles given to lienholders in general must be at least this large. However, many of those potential class members may now be barred by the statute of limitations, and there is still no evidence of which owners had notice of the impoundment or transfer of possession. In short, Plaintiffs do not adequately or concretely enough prove that the class is sufficiently numerous to justify certification of a class.

## B. Commonality

Plaintiffs must show there are common questions of law or fact to class members. Fed. R. Civ. P. 23(a)(2). This requirement is satisfied, as it was with Plaintiffs' First Motion. (Doc. 97 at 12-13). The questions of whether Defendant acted pursuant to a policy or custom, as well as whether class members are entitled to notice and a hearing are common to all potential class members.

**C. Typicality**

Plaintiffs must also show that the named Plaintiffs' claims are typical of the class claims. The class claims must be "'fairly encompassed by the named plaintiff's claims.'" *Armstrong v. Chi. Park Dist.*, 117 F.R.D. 623, 629 (N.D. Ill. 1987) (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.3d 225, 232 (7th Cir. 1983) (internal quotation marks omitted).

The only remaining claim of the named Plaintiffs is that Defendant gave possession of their vehicles to their respective lienholders without notice to the owners and without providing an opportunity to contest that action. In that regard, Plaintiffs have fairly typical claims, and all class members would have claims based on the same procedural due process theory. Plaintiff Cassidy has the possibly unique fact that he attempted to retrieve his vehicle in person with the required fees but was allegedly told that only the lienholder would be allowed to take possession of his vehicle. Though this may provide evidence of a policy or custom, if the violation is that Defendant did not provide notice and an opportunity to be heard, this fact does not relate to that violation and would not ruin the typicality of his claim. Thus, this requirement is satisfied.

**D. Adequacy**

The adequacy requirement has two parts: the named plaintiffs must adequately represent the absent class members' interests and the proposed class

counsel must be adequate. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Though the named Plaintiffs may be adequate representatives of their class, the Court finds Plaintiffs' counsel, Richard Steagall, incapable of adequately representing the interests of the class. The inadequacy of class counsel can alone be grounds to deny certification of a class. *See id.* A court can consider the performance of counsel in the present case as well as past cases. *See id.* at 592-93. Some of the considerations for whether counsel is adequate are delays in seeking class certification, noncompliance with discovery requests or obligations, failure to conduct discovery on behalf of the absent class members, and quality of work, such as diligence and attention to detail. *See, e.g.*, *id.* at 593; *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 577 (C.D. Cal. 2007); *Johnson v. Shreveport Garment Co.*, 422 F. Supp. 526, 535-38 (W.D. La. 1976).

    In addition to the problems noted above in the Court's discussion of the numerosity requirement, such as Plaintiffs' counsel's inability to accurately articulate the method of determination of class members and his delays in pursuing class certification, Plaintiffs' counsel has demonstrated an inability to adequately protect the interests of class members both in this case and in prior cases before this Court. Counsel has proven a lack of diligence and attention to detail. He appears unable to keep track of which claims have been dismissed by the Court. (*See, e.g.*, Doc. 152 at 11 (referencing the Fourth Amendment claim that had been dismissed almost a year prior to the document's filing date)). Defendant notes Plaintiffs have not undertaken any written discovery in the course of this litigation, nor have they deposed any Police Department employees in an attempt to obtain support for class

certification. (Doc. 122 at 12). To support the present Motion for Class Certification, Plaintiffs did not provide any supporting evidence beyond what was filed in their initial Motion a year earlier; large portions of the brief in support were also largely unmodified. (*See, e.g.*, Doc. 85 at 11-12; Doc. 116 at 15 (listing the proposed classes from the First Motion by mistake)). In past cases before this Court as well as in this case, counsel has shown problems with meeting deadlines, frequently needing extensions and delaying proceedings.

In an attempt to demonstrate his adequacy, counsel notes his experience representing nine plaintiffs in one case and serving as co-counsel for thirty-six plaintiffs who objected to a class action in another case. (Doc. 116 at 19-20). This experience does not satisfy the need for capable counsel. Counsel has demonstrated a lack of diligence that cannot be overcome by reference to a handful of prior complex cases. The Court does not believe Plaintiffs' counsel is up to the time-consuming, complex, and important tasks involved in representing a class. Thus, the adequacy requirement is not satisfied.

Because the 23(a) requirements are not satisfied, the Court need not consider whether a 23(b) requirement is satisfied. Plaintiffs' Motion to Certify Class must be denied.

## CONCLUSION

IT IS THEREFORE ORDERED:

1. Defendant's Motion for Summary Judgment (Doc. 142) is GRANTED IN PART, and DENIED IN PART.

2. The parties are on notice that the Court is considering granting judgment in Plaintiffs' favor on the limited issue of whether they were entitled to process before Defendant gave their vehicles to the lienholders. The parties are INVITED to file a brief in opposition or support of such a decision.

3. Plaintiffs' Motion to Withdraw portions of their Motion for Class Certification (Doc. 146) is GRANTED.

4. Plaintiffs' Motion to File a Second Amended Complaint (Doc. 146) is DENIED.

5. Plaintiffs' Second Motion for Class Certification (Doc. 115) is DENIED.

Entered this <u>16th</u> day of November, 2012.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
